1          UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF ARIZONA
2
                  _____
3
   **Olga Cervantes, et al.,**        )
4                                )
                Plaintiffs,      )
5                                )
           vs.                   )   CIV 09-517-PHX-JAT
6                                )   Phoenix, Arizona
   **Countrywide Home Loans,**        )   September 8, 2009
7  **Inc., et al.,**                  )   9:01 a.m.
                                 )
8              Defendants.       )
   _____)
9



10



11



12          REPORTER'S TRANSCRIPT OF PROCEEDINGS

13                  (**Motion Hearing**)

14


15      **BEFORE:**  THE HONORABLE **JAMES A. TEILBORG**, JUDGE

16


17


18


19


20
   Official Court Reporter:
21
   David C. German, RMR, CRR
22 Sandra Day O'Connor U.S. Courthouse, Suite 312
   401 West Washington Street, SPC-39
23 Phoenix, Arizona 85003-2151
   (602) 322-7251
24

25 PROCEEDINGS TAKEN BY STENOGRAPHIC COURT REPORTER
   TRANSCRIPT PREPARED BY COMPUTER-AIDED TRANSCRIPTION

**APPEARANCES:**

**FOR THE PLAINTIFFS:**

     Koeller, Nebeker, Carlson & Haluck, LLP
     Attorneys at Law
     3200 North Central Avenue, Suite 2300
     Phoenix, Arizona 85012-2443
     By:  William A. Nebeker, Esq.
         Valerie R. Edwards, Esq.
         Gregory E. Williams, Esq.

     Hager & Hearne
     Attorneys at Law
     245 E. Liberty Street, Suite 110
     Reno, Nevada 89501
     By:  Robert R. Hager, Esq.

**FOR DEFENDANTS COUNTRYWIDE HOME LOANS, INC., BANK OF AMERICA, N.A., MERRILL LYNCH & COMPANY, INC., FIRST FRANKLIN FINANCIAL CORPORATION, and LASALLE BANK, N.A.:**

     Bryan Cave, LLP
     Attorneys at Law
     Two N. Central Avenue, Suite 2200
     Phoenix, Arizona 85004-4406
     By:  Robert W. Shely, Esq.

**FOR DEFENDANTS COUNTRYWIDE HOME LOANS, INC., BANK OF AMERICA, N.A., MERRILL LYNCH & COMPANY, INC., FIRST FRANKLIN FINANCIAL CORPORATION, LASALLE BANK, N.A., and WELLS FARGO BANK, N.A.:**

     Goodwin Procter, LLP
     Attorneys at Law
     901 New York Avenue, N.W.
     Washington, D.C. 20001
     By:  Thomas M. Hefferon, Esq. (pro hac vice)

**FOR DEFENDANT FEDERAL HOME LOAN MORTGAGE CORPORATION:**

     Sherman & Howard, LLC
     Attorneys at Law
     2800 N. Central Avenue, Suite 1100
     Phoenix, Arizona 85004-1043
     By:  Gregory W. Falls, Esq.

**FOR DEFENDANT FEDERAL HOME LOAN MORTGAGE CORPORATION:**

        Landman, Corsi, Ballaine & Ford, PC
        Attorneys at Law
        120 Broadway, 27th Floor
        New York, New York, 10271
        By:  Mark S. Landman, Esq.


**FOR DEFENDANT FEDERAL NATIONAL MORTGAGE ASSOCIATION:**

        Snell & Wilmer, L.L.P.
        Attorneys at Law
        One Arizona Center
        400 E. Van Buren Street, Suite 1900
        Phoenix, Arizona 85004-2202
        By:  James R. Condo, Esq.
             Gregory J. Marshall, Esq.


**FOR DEFENDANT GMAC MORTGAGE, L.L.C.:**

        Reed Smith, LLP
        Attorneys at Law
        2500 One Liberty Place
        1650 Market Street
        Philadelphia, Pennsylvania 19103-7301
        By:  Henry F. Reichner, Esq.


**FOR DEFENDANTS MERSCORP, INC. and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.:**

        Morgan, Lewis & Bockius, LLP
        Attorneys at Law
        200 S. Biscayne Boulevard
        5300 Wachovia Financial Center
        Miami, Florida 33131-2339
        By:  Robert M. Brochin, Esq.

**FOR DEFENDANTS NATIONAL CITY BANK, NATIONAL CITY CORPORATION, NATIONAL CITY MORTGAGE, PNC FINANCIAL SERVICES GROUP, INC.:**

      Ballard, Spahr, Andrews & Ingersoll, LLP
      Attorneys at Law
      3300 Tower, Suite 1800
      3300 North Central Avenue
      Phoenix, Arizona 85012-2518
      By:  Brian Schulman, Esq.
          David H. Pittinsky, Esq.

**FOR DEFENDANTS TIFFANY & BOSCO, P.A.:**

      Mariscal, Weeks, McIntyre & Friedlander, PA
      Attorneys at Law
      2901 North Central Avenue
      Suite 200
      Phoenix, Arizona 85012-2705
      By:  Timothy J. Thomason, Esq.

**FOR DEFENDANT AIG UNITED GUARANTY CORPORATION:**

      Fennemore Craig
      Attorneys at Law
      3003 N. Central Avenue
      Suite 2600
      Phoenix, Arizona 85012-2913
      By:  Todd Stephen Kartchner, Esq.

**FOR DEFENDANT WELLS FARGO BANK, N.A.:**

      Snell & Wilmer, LLP
      Attorneys at Law
      1 Arizona Center
      400 E. Van Buren
      Phoenix, Arizona 85004-0001
      By:  Barbara J. Dawson, Esq.

1    **FOR DEFENDANT GE MONEY BANK:**

2        Buckley Sandler LLP
         Attorneys at Law
3        1250 24th Street N.W.
         Suite 700
4        Washington, DC 20037
         By:  Andrew R. Louis, Esq.

5

6    **FOR DEFENDANT GMAC MORTGAGE, L.L.C.:**

7        Lewis & Roca, LLP
         Attorneys at Law
8        40 N. Central Avenue
         Phoenix, Arizona 85004-4429
9        By:  Craig W. Phillips, Esq.

10

11   **FOR DEFENDANT FEDERAL NATIONAL MORTGAGE ASSOCIATION:**

12       Foley & Lardner, LLP
         Attorneys at Law
13       321 N. Clark Street
         Suite 2800
14       Chicago, Illinois 60654
         By:  Jill L. Murch, Esq.

15

16   **FOR DEFENDANT CITIMORTGAGE, INC.:**

17       Mayer Brown, LLP
         Attorneys at Law
18       71 S. Wacker Drive
         Chicago, Illinois 60606
19       By:  Lucia Nale, Esq.

20   **FOR DEFENDANT J.P. MORGAN CHASE BANK, N.A.:**

21       Burke, Warren, MacKay & Serritella, PC
         Attorneys at Law
22       330 N. Wabash Avenue
         Suite 2200
23       Chicago, Illinois 60611
         By:  Daniele J. Szukala, Esq.

24

25

1  **FOR DEFENDANT J.P. MORGAN CHASE BANK, N.A.:**

2       Maynard, Cronin, Erickson, Curran & Sparks, PLC
        Attorneys at Law
3       3200 N. Central Avenue
        Suite 1800
4       Phoenix, Arizona 85012-2443
        By:  Jennifer Ann Sparks, Esq.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    Phoenix, Arizona
                     September 8, 2009
 2

 3          (Proceedings convened at 9:01 a.m.)

 4          THE COURT:  Thank you.  Please be seated.

 5          THE CLERK:  Civil case 09-517, Cervantes, et al.        09:01:53

 6   versus Countrywide Home Loans, et al., on for motion hearing.

 7          Counsel, please state your appearances for the

 8   record.

 9          MR. NEBEKER:  Bill Nebeker, Valerie Edwards and

10   Robert Hager for the plaintiffs, Your Honor.                   09:02:06

11          THE COURT:  All right.  Good morning.

12          MR. NEBEKER:  Good morning.

13          MR. SHELY:  Good morning, Your Honor.  Bob Shely here

14   for the Countrywide defendants, Bank of America, Merrill Lynch,

15   First Franklin Financial, and LaSalle Bank.                    09:02:15

16          THE COURT:  All right.  Good morning.

17          MR. HEFFERON:  Good morning, Your Honor.  Thomas

18   Hefferon for the same defendants and also Wells Fargo.

19          THE COURT:  Good morning.

20          MR. BROCHIN:  Good morning, Your Honor.  Bobby          09:02:24

21   Brochin, Morgan, Lewis & Bockius, on behalf of defendants

22   Mortgage Electronic Registration Systems and MERSCORP, Inc.

23          THE COURT:  All right.  Good morning.

24          MR. PITTINSKY:  Good morning, Your Honor.  David

25   Pittinsky of Ballard Spahr representing National City Bank,    09:02:34
```

1  National City Mortgage, National City Corporation, and PNC

2  Financial Services Group, Inc.

3            THE COURT:  Very good.  Good morning.

4            MR. LANDMAN:  Good morning, Your Honor.  My name is

5  Mark Landman from Landman, Corsi, Ballaine & Ford on behalf of    09:02:47

6  Freddie Mac.

7            THE COURT:  Good morning.

8            MR. REICHNER:  Good morning, Your Honor.  Henry

9  Reichner, Reed Smith, for GMAC Mortgage.

10           THE COURT:  Good morning.                                09:02:56

11           MR. THOMASON:  Tim Thomason, Your Honor, for

12  Tiffany & Bosco.

13           THE COURT:  Good morning.

14           MR. SCHULMAN:  Brian Schulman, Ballard Spahr, for

15  PNC Bank, National City Mortgage, National City Bank, National

16  City Corporation.

17           THE COURT:  All right.  Good morning.

18           MR. KARTCHNER:  Todd Kartchner, Your Honor, from

19  Fennemore Craig on behalf of United Guaranty Corporation.

20           THE COURT:  Good morning.                                09:03:14

21           MS. DAWSON:  Good morning, Your Honor.  Barb Dawson,

22  Snell and Wilmer, for Wells Fargo.

23           THE COURT:  Good morning.

24           MR. CONDO:  Your Honor, good morning.  Jim Condo,

25  Snell and Wilmer, on behalf of MERSCORP, Mortgage Electronic      09:03:21

```
 1  Registration Systems, Inc., and Fannie Mae.

 2          THE COURT:  All right.  Good morning.

 3          MR. LOUIS:  Good morning, Your Honor.  Andrew Louis

 4  from Buckley Sandler here on behalf of GE Money Bank.

 5          THE COURT:  Good morning.                          09:03:34

 6          MR. MARSHALL:  Good morning.  Greg Marshall, Snell

 7  and Wilmer, on behalf of HSBC Mortgage Corporation, U.S.A.

 8          THE COURT:  Good morning.

 9          MR. PHILLIPS:  Good morning, Your Honor.  Craig

10  Phillips, Lewis and Roca, on behalf of GMAC.                09:03:44

11          THE COURT:  All right.  Good morning.

12          MS. MURCH:  Good morning, Your Honor.  Jill Murch

13  from Foley & Lardner on behalf of Fannie Mae.

14          THE COURT:  Good morning.

15          MS. NALE:  Good morning, Your Honor.  Lucia Nale,    09:03:54

16  Mayer Brown, on behalf of CitiMortgage, Inc.

17          THE COURT:  Good morning.

18          MS. SZUKALA:  Good morning, Your Honor.  Danielle

19  Szukala, Burke, Warren, MacKay & Serritella, on behalf of J.P.

20  Morgan Chase Bank, Inc.                                     09:04:04

21          THE COURT:  Good morning.

22          MS. SPARKS:  Good morning, Your Honor.  Jennifer

23  Sparks also for J.P. Morgan Chase Bank.

24          THE COURT:  Good morning.

25          MR. FALLS:  Good morning, Your Honor.  Gregory Falls, 09:04:10
```

1    Sherman & Howard, on behalf of Freddie Mac.

2            THE COURT:  Good morning.

3            MR. WILLIAMS:  Good morning, Your Honor.  Gregory

4    Williams on behalf of the plaintiffs.

5            THE COURT:  All right.  Good morning to all of you      09:04:19

6    and welcome.  To those of you from out of state, welcome to

7    Phoenix and this court.

8            This is the time set for hearing on various motions.

9    I am mindful of the order that went out 17 July that ordered

10   that we would first take up the plaintiffs' motion to amend    09:04:49

11   the complaint.  I'm still prepared to do that, giving each

12   side a total of ten minutes, and then I'm given to understand

13   by virtue of a phone call sometime ago that the defendants

14   have worked out some type of protocol in terms of how you want

15   to proceed.                                                    09:05:16

16           Basically, I've allotted the morning, with a

17   provision for a 20-minute mid-morning break, for hearing on

18   these motions, which is not to suggest that it's mandatory

19   that you utilize all of that time.  To no surprise on my part,

20   you have done an excellent job articulating yourselves in your  09:05:43

21   written filings, which I have read.

22           And so let me just ask Mr. Nebeker, does it still

23   make sense to proceed with your motion to amend first or --

24   and before you start on that, I just want to find out if

25   that -- if taking that up first still makes sense, after which  09:06:08

1  we'll take up the rest of the motions.

2          MR. NEBEKER:  Your Honor, I don't know if it makes

3  sense but that's what I prepared for.

4          THE COURT:  All right.  Then we'll -- let me just

5  find out from defense counsel, whoever it is may be bold          09:06:19

6  enough to speak on behalf of the defendants, but have you all

7  some protocol in mind in terms of how you'd like to proceed?

8          MR. SHELY:  Yes, Your Honor.  Bob Shely here on

9  behalf of -- as kind of a manager of the group here

10 temporarily.                                                      09:06:38

11         We were prepared to argue the motions -- the

12 substantive motions first and then the motion regarding the

13 amendment, but we can go either way, whatever the Court's

14 preference is on that.  We have a lineup.  We thought we'd

15 spend a minute or two telling you what we had in mind unless    09:06:51

16 the Court has something different in mind in terms --

17         THE COURT:  You may.

18         MR. SHELY:  -- of the presentation.

19         Judge, we -- let me come up to the podium here.

20         We, as defendants, have indeed spent some time and      09:07:00

21 effort to coordinate the arguments and to not take up, at

22 least as planned, the entire 120 minutes that the Court

23 allotted to us, and we'll do our best to stick to that

24 schedule.

25         What we thought we would do is to start out with what   09:07:14

1    we call the originator defendants, which would be primarily

2    Wells Fargo and the Countrywide defendants that I listed when

3    I made my appearance, and we've allocated 20 minutes to them.

4    Mr. Hefferon will present that argument to the Court.  That

5    includes rebuttal so I don't know that he'll need the entire          09:07:31

6    20 minutes.  We'll have to see.  And he is going to discuss,

7    basically, Counts 1 through 5 of the original complaint.

8          We would then have MERS arguing basically

9    cross-lapping a little bit on Counts 5 through 10, also

10   allocated for 20 minutes, and again, that includes rebuttal,         09:07:51

11   so again, we don't expect to use the full 20 on the front end.

12         Freddie Mac also has 20 minutes.  They're going to

13   present arguments regarding the MERS shareholders' position.

14         GMAC we've allotted five minutes to talk about any

15   follow-up on the shareholder issue and also discuss issues          09:08:09

16   from those defendants who are members of MERS but are not

17   necessarily shareholders of MERS.

18         And then PNC/National City Bank organizations will

19   have 15 minutes to discuss standing and federal preemption,

20   also including rebuttal.                                            09:08:28

21         And Tiffany & Bosco, whose issues are separate from

22   the other defendants, I think, will have about ten minutes,

23   including rebuttal.

24         So that's how we thought we'd break them down rather

25   than on a motion-by-motion basis and issue-by-issue basis.  We      09:08:41

```
1   thought that would make more sense.
2           THE COURT:  Thank you.
3           Well, what we'll do, then, we'll start out with the
4   motion to amend and then I'll let the defendants proceed in
5   the order they have outlined, with the caveat that basically      09:08:56
6   what that will involve, then, is each side having about an
7   hour and ten minutes, with the movants being able to reserve
8   whatever is left over for rebuttal, and then we'll take --
9   we'll take the motion to amend now, which will allow each side
10  ten minutes, and the plaintiff can reserve whatever is left      09:09:29
11  over for rebuttal.
12          MR. SHELY:  That's fine, Your Honor.  One procedural
13  question.  Does the Court prefer defendants to go seriatim or
14  does the Court prefer to hear an issue and then a counter
15  response?                                                        09:09:46
16          THE COURT:  I think we'll go -- I do understand what
17  seriatim means.  I was trying to decide if that -- I was
18  trying to decide if that was the appropriate way to describe
19  it.  I'm sure it is.  But what I had in mind -- let me just
20  use my words.  What I had in mind is that the defendants would   09:10:06
21  go through their entire presentation -- let me put it that
22  way -- and then the plaintiff can respond in whatever order to
23  that presentation he wishes or they wish, and then the
24  defendants can reply in whatever order by then seems to make
25  the most sense.                                                  09:10:31
```

1          MR. SHELY:  Very well.  Thank you, Your Honor.

2          THE COURT:  All right.  Mr. Nebeker, you may proceed.

3          MR. NEBEKER:  Thank you, Your Honor.

4          Your Honor, our briefs have pretty much laid forth

5    the standard by which a motion to amend is to be viewed by          09:10:47

6    this Court and I won't spend much time on that other than to

7    point out that we have had this case, as well as a case in

8    Tucson, as well as a case in California, and several cases in

9    Nevada, where we have the pleasure of spending a great deal of

10   time with the same defendants over and over again on these          09:11:15

11   same issues, and quite frankly, when we filed this first case,

12   this case, Cervantes, here in Maricopa County, we were under

13   the gun a little bit to get the case filed because people's

14   houses were at risk and we wanted to make sure we got it out

15   there to stop that process.                                         09:11:37

16         We have now had the benefit of reading and analyzing

17   and taking to heart many of the motions that the defense have

18   filed in not only this jurisdiction but others, and as a

19   result we're learning how best to craft our complaint, how

20   best to, under *Twombly*, give the defendants the grounds of our     09:12:03

21   complaint, if you will.

22         Essentially, what our case is is -- well, it's based

23   upon the fact that under the MERS system, the defendants

24   created the MERS system, they benefitted from the MERS system,

25   and, unfortunately for them, we believe, the MERS system           09:12:29

1   creates a gap, we call it the MERS gap, whereby the security

2   interest created by the deed of trust is void.

3        In effect, what we're saying to this Court and other

4   courts, all of the foreclosures that we read about, if they're

5   based upon the MERS systems, are wrongful, not valid, and        09:12:58

6   we'll get into that, I think, a little bit more on the motions

7   to dismiss, but in terms of our motion to amend, it's that

8   basic premise that springs forward all of the different

9   grounds.

10        We don't believe that there's a true beneficiary          09:13:19

11  created in these deeds of trust, be they in California,

12  Arizona, Nevada or any of the 27-plus states that allow

13  nonjudicial foreclosure, and essentially, what we're asking

14  this court and other courts is some sort of judicial oversight

15  on all of these various foreclosures so that a judge passes     09:13:40

16  judgment on what is happening as opposed to someone on the

17  courthouse steps passing judgment on whether or not these are

18  true.

19        When you superimpose over that the issues that have

20  been in the news ad nauseam for the last year dealing with      09:14:00

21  bailouts, TARP money, things of that nature, we're convinced

22  and believe, based on the experts that we've hired and the

23  investigation that we've done, that the obligations from the

24  notes are, in fact, discharged.

25        It's pertinent at this time to talk about how these       09:14:35

1   notes get securitized.

2          Certainly, at some point in time we've gone from the

3   old days where you went to your banker, borrowed money, he

4   took a deed of trust, loaned you the money and you knew who

5   you were paying, why you were paying, and ultimately who was          09:14:52

6   going to take your house if you didn't pay.

7          In these cases and these times, it's changed

8   completely.  Our clients, whether they be in this court or

9   other courts, are not really aware of who even owns their

10  notes.  It could be some investor, offshore investment group,        09:15:09

11  that has bought their note, and if they've been paid either

12  through a settlement of a lawsuit against these very banks

13  that securitized things or if they've received TARP money to

14  pay them off, it's our position that these obligations have

15  been discharged.                                                     09:15:29

16         So that's sort of the causes of action, if you will,

17  that we try to come up with.  We believe we have a cause of

18  action for wrongful foreclosures.  We feel we've got a cause

19  of action for unjust enrichment.  We think we've got causes of

20  action for conspiracy to commit fraud through the creation and       09:15:51

21  use of the MERS system.  We've got trespass, if, in fact, they

22  are taking houses without justification.

23         So having said all that, I'm a little leery of

24  telling this Court that I'm still not happy with the motion to

25  amend because, quite frankly, I believe we need to amend that        09:16:17

1  complaint one more time to allege these causes of action

2  because I think once we get it right then maybe we can get an

3  answer filed in one of these cases and move into the real

4  issue of litigating this case on the merits.

5        Thank you.                                                09:16:37

6        THE COURT:  Thank you.

7        MR. HEFFERON:  Good morning again, Your Honor.

8  Thomas Hefferon.  Pleasure to be in your court.  I'll be

9  brief.

10       Plaintiffs indicated that they believe that they        09:16:55

11 actually would want an opportunity to amend yet again.  In

12 light of that, let me just make a couple of observations.

13       Just on the actual papers, we pointed out that the

14 proposed amendment, which apparently isn't what the plaintiffs

15 would like to stand on at this point, would be futile because  09:17:13

16 it would be attempting to fix claims that themselves are

17 faulty.  With the exception of Count 7, all the amendments

18 either make minor changes or change the parties and those

19 kinds of things and so therefore really don't address the

20 substantive difficulties with those claims.                    09:17:34

21       And with respect to Count 7, all that's added to this

22 allegation are a number of factual assertions, most of which

23 are in the public record, about MERS, and those that aren't in

24 the public record are exceedingly vague and don't cure the

25 specificity requirements that apply to Count 7.                09:17:54

 1          For example, although Count 7, which is a conspiracy

 2    count, requires, as the Supreme Court said in *Twombly*, that

 3    the allegations be specific to show plausibly that there is an

 4    agreement, there is nothing added in the proposed amendment

 5    that shows a plausible agreement.  All that they say, for                09:18:14

 6    example, with respect to the loan originators, is the loan

 7    originators agreed to procure loans that were illegal.

 8    There's no assertion about how that happened or who talked to

 9    who or anything that would even suggest that that agreement was

10    plausible.                                                               09:18:32

11          So there really -- there is nothing that on this go

12    round, apparently, the last -- not the last go round but on

13    this go round, nothing that cures the defects in the original

14    motion and the original complaint.  We have the pending

15    motions.  We'd like to go forward on those motions to                   09:18:48

16    demonstrate that the complaint as pled is not adequate in any

17    of the counts.

18          On the larger issue of the context that Mr. Nebeker

19    referred to, as he seems to acknowledge, some of these issues,

20    wrongful foreclosure, unjust enrichment, trespass, those are            09:19:07

21    not even in the complaint.  This theory that these lawsuits

22    were brought in order to demonstrate that the money isn't owed,

23    it's been paid off, the deeds of trust are void, those kinds of

24    things, they're just not in the complaint.  The complaint's not

25    pled that way.                                                          09:19:27

1          And so we have the complaint that we have and, you

2   know, it's -- what I think -- we certainly, from the

3   standpoint of defendants, you know, if we ever got to the

4   merits, would demonstrate that those theories are, in fact,

5   nothing more than theories, largely from a blogger who's now          09:19:45

6   been hired as an expert by the plaintiffs' side, and there's

7   no substance to them.

8          The loans were made by the lenders when the lenders

9   had the money and financed the loans themselves.  The

10  plaintiffs executed a deed of trust and a promissory note.          09:20:06

11  The promissory note is enforceable and what has happened with

12  respect to the named plaintiffs is attempts to enforce that

13  promissory note and by someone with the authority to do so.

14         As Your Honor might recall, earlier in this case we

15  had a potential injunction issue related to one of the  named          09:20:26

16  plaintiffs, and we, in those papers, demonstrated that the

17  attempted enforcement of the promissory note that was at issue

18  was, in fact, by someone who actually held the  promissory

19  note.

20         Those are details, obviously, not here for the          09:20:37

21  purposes of the motion to dismiss but Mr. Nebeker raises the

22  general context and I wanted to make sure that Your Honor

23  heard our side of it.

24         But from our standpoint in terms of the motion to

25  amend, the first amended complaint, which is what's before us          09:20:47

1  today, is defective, and the proposed amendment, which would

2  be the second amended complaint, doesn't cure those

3  deficiencies and therefore we would suggest it shouldn't be

4  allowed.  Furthermore, in Your Honor's discretion, shouldn't

5  be allowed because even plaintiffs concede that if the first          09:21:03

6  amended complaint doesn't stand that they would want another

7  chance.

8         Thank you.

9         THE COURT:  Thank you.

10        Mr. Nebeker, you have about three more minutes left.          09:21:12

11        MR. NEBEKER:  Thank you, Your Honor.

12        I don't think I said that the second amended

13  complaint is without merit.  I think what I said was that the

14  second amended complaint could be pled a little bit better.  I

15  believe that the second amended complaint has the specificity        09:21:29

16  necessary to give this Court and give the defendants the

17  gravamen, if you will, of our complaint for conspiracy.  And

18  that complaint for conspiracy is based on an agreement, and

19  the agreement is they formed a corporation to do the very

20  things that they're doing.                                           09:21:50

21        This group formed a corporation, a private

22  corporation, to avoid the necessity to record every time they

23  changed hands, things changed hands.  They formed a

24  corporation so they could securitize notes, taking away from

25  the borrower what that borrower would ultimately need to know        09:22:08

1   in terms of who they are paying their money to, those types of

2   things.

3        That is really what is the basis of our complaint.

4   The second amended complaint sets forth more fully what they

5   were basically complaining about, but the bottom line is, in        09:22:26

6   my estimation, I think we could do a better job even now given

7   the fact that we have now filed this same complaint in three

8   different jurisdictions and had the benefit of the defendants

9   pointing out the inadequacies of what they claim needs to be

10  told to them.  But I believe our second amended complaint          09:22:55

11  certainly does that.  All I'm saying is I think we can still

12  do a better job, and that would be to lay forward the causes

13  of action that I enumerated to this Court.

14        Thank you.

15        THE COURT:  Thank you.                                        09:23:08

16        All right.  It's ordered taking under advisement the

17  motion to amend the complaint.

18        And the defendants may now proceed.

19        MR. HEFFERON:  Me again, Your Honor, on the --

20  appearing here on the motion to dismiss primarily for the two      09:23:32

21  defendants who actually made the loans to the named

22  plaintiffs, and that is Countrywide, who made the Cervantes

23  loan, and First Franklin, who made the loans to Almendarez and

24  Maximo, the originator defendants as we refer to them.

25        Just to start, it's interesting that the case is             09:23:57

1   characterized by the plaintiff as relating to MERS and that

2   the issue is whether there's a conspiracy involving MERS.

3        The claims, with one exception that I'm going to

4   address, don't have anything to do with MERS.  They actually

5   have to do with alleged violations of law at the time of        09:24:15

6   origination by the originator defendants.

7        And as Your Honor knows, the standard for the motion

8   to dismiss is whether plaintiffs allege a cognizable legal

9   theory and if they have a cognizable legal theory whether they

10  allege facts sufficient to state a cognizable claim.           09:24:35

11       Even since this case -- since these motions were

12  filed, the Supreme Court has added additional color to the

13  latter issue, whether facts were alleged that are sufficient

14  to state a cognizable claim, when the Supreme Court decided

15  the *Ashcroft versus Iqbal* case.                              09:24:50

16       And as Your Honor knows, the Supreme Court is

17  certainly moving in the direction of making sure that there is

18  sufficient factual material alleged in the complaint and not

19  simply an allegation that there's been a violation of law or a

20  legal conclusion that there's been a conspiracy, and certainly  09:25:05

21  at this point the lower courts, including Your Honor, I'm sure,

22  are working out the issue of how to apply those cases, but

23  plainly, we would contend there is a need certainly to give

24  some factual material, not just a recitation of what the

25  elements of the claim are but something that really gives some  09:25:23

1   heft to it such that it appears plausible that those elements

2   actually will be met.

3        With respect to the origination claims, there are

4   problems of both types, both failure to allege a legal

5   cognizable claim as well as a failure to allege facts that          09:25:40

6   would actually state or support that claim.

7        The first claim is a claim under the Truth in Lending

8   Act, and as Your Honor knows from having been on the bench and

9   in private practice, the Truth in Lending Act has a large

10  variety of requirements applicable in various instances, very      09:25:54

11  detailed regulations, detailed statute itself, and we contend

12  that the plaintiffs have failed to state a claim on the Truth

13  in Lending Act because largely, and plaintiffs don't disagree

14  with this, their allegation is that one or more of the

15  requirements of truth in lending were not complied with, and       09:26:14

16  that appears in paragraphs 88 and 89 of the complaint.

17       There needs to be more than that.  There needs to be

18  some assertion as to what aspect of the Truth in Lending Act

19  was not complied with.  If there's ten, they need to be

20  identified.  If there's only one, that needs to be identified,     09:26:30

21  and some factual material that would suggest that that

22  violation occurred, not simply alleging that the Truth in

23  Lending Act requirements on annual percentage rate were

24  violated, for example, but actually saying because the

25  calculation did not take into account X or took into account      09:26:48

1  Y, something more than just simply reciting the Truth in

2  Lending Act was violated.

3       But the plaintiffs' claim isn't even that close.  The

4  plaintiffs' claim is merely just that the Truth in Lending Act

5  was violated, and we contend that's not enough.  It doesn't          09:27:04

6  give certainly my clients fair notice of what aspect of these

7  very complicated regulations and very detailed statutes we

8  need to take a look at and see if there's been a violation.

9       On the second claim, which is the Real Estate

10 Settlement Procedures Act claim, that's a little simpler and         09:27:21

11 more straight forward.

12       They essentially claim four violations, two of them

13 which is alleged violations by failing to give the settlement

14 statement to the borrowers and failing to give an informational

15 booklet to the borrowers.  Those requirements arise out of          09:27:37

16 sections of RESPA to which there's no prior right of action,

17 and there's cases cited in the briefs that explain that.

18       With those two allegations put aside, the remaining

19 two allegations in RESPA on Count 2 have to do with other

20 aspects of the statute.  One is the requirement that a lender,       09:27:54

21 in this case the originators, provide notice that their loan

22 servicing might be transferred.

23       There's been assertion this morning that these

24 borrowers don't know who their lenders are.  Obviously,

25 Congress recognizes the reality which is consistent with            09:28:10

1  negotiable instruments generally, which is that the loan

2  servicing may be transferred and in order to protect people

3  they require the issuing of those notices.

4        The allegation is that those notices were not

5  properly given but that allegation does not state a claim          09:28:26

6  under RESPA unless there's an assertion that actual damages

7  resulted.  There's no allegation of actual damages so there's

8  no claim for relief under that section of RESPA, which is

9  Section 2605.

10       The final RESPA assertion is that my clients charged       09:28:41

11  unreasonable fees.  There's case law in a number of circuit

12  courts, including the 11th, 3rd, and 2nd, that RESPA does not

13  regulate fees and it's not a violation of RESPA to charge an

14  unreasonable fee.

15       And so that disposes of all four RESPA claims and the      09:28:58

16  entire second claim.

17       The third claim, which is under a section of TILA

18  that applies only to so-called high-cost mortgages, the

19  Homeowners Equity Protection Act, is actually a claim that in

20  the proposed second amended complaint the plaintiffs drop.       09:29:15

21  And so I think we'll just rest on the papers there.  I don't

22  think there's a dispute that that claim's not properly pled.

23       The fourth claim, again, solely an origination claim,

24  doesn't have anything to do with MERS, is an allegation that

25  Countrywide, with respect to Cervantes, and First Franklin       09:29:31

1  with respect to Maximo and Almendarez, violated the Fair

2  Housing Act.  That's a statute that prevents persons from

3  discriminating against minorities.

4       The problem we have with this claim, in addition to

5  statute of limitations, which we brief and I'll rest on, is          09:29:51

6  that this is sort of the classic situation for the originator

7  defendants where there's not enough factual material.  All the

8  plaintiffs say is that they were offered a loan less favorable

9  than would have been offered to a white borrower all other

10  things being equal.                                                  09:30:08

11       The case law and I think a proper application of

12  *Iqbal* as well as *Twombly* requires something that suggests

13  plausibility, something more than that, and we suggest the

14  classic formulation, which is the plaintiffs weren't qualified

15  for a better loan.  Obviously, it's not discriminatory to fail       09:30:23

16  to give the plaintiffs a particular loan if it turns out they

17  weren't qualified for it.

18       And there's no assertion in that regard, no assertion

19  of fact that would suggest that somehow Countrywide or First

20  Franklin were providing less favorable credit terms to the          09:30:41

21  plaintiffs because they were minorities, as opposed to because

22  they were less creditworthy, for example, or some other reason,

23  because they didn't have adequate security.

24       So there's really nothing there that would get you

25  over the hump.                                                       09:30:57

1        And I point out -- I mean, this is important --

2    obviously, it's all important but this is important, and this

3    is the claim against my clients, that they purposely

4    discriminated against minorities.  And while I would not

5    suggest to the Court that the standard would vary depending         09:31:08

6    on -- you know, *Iqbal* and *Twombly* wouldn't vary depending on

7    the particular claim, it is important to remember that in

8    connection with this, which is really an *Iqbal* and *Twombly*

9    issue, that leveling a very serious accusation of

10   discrimination should be backed by something, more than just        09:31:26

11   rote recitation of the elements of the claim.

12       The fifth claim is under the Consumer Fraud Act from

13   Arizona.  Each of these three plaintiffs are Arizona residents.

14   And we make a -- as well as the statute of limitations

15   argument, which again I'll rest on the papers, we make a            09:31:44

16   Section 9(b) -- it's going to be a Rule 9(b) argument.

17       There's no who, what, where, and when that's alleged

18   in the complaint with respect to any of these three people as

19   to the fraud.  All that's alleged is that my clients

20   misrepresented, concealed, or omitted the terms of the loan.        09:31:59

21   That's not enough, we would suggest, under Rule 9(b), and

22   certainly also under the Rule 8 pleading standards.

23       The last claim which I'll touch on briefly, because

24   it mostly overlaps with MERS's argument, is the sixth claim,

25   which is an allegation that the originator defendants             09:32:17

1    conspired with MERS to commit fraud.

2        I just wanted to talk about only one aspect of that,

3    and that is, in Arizona in order to have a claim for

4    conspiracy there has to be an underlying wrong.  There has to

5    be both an agreement and an underlying wrong.  The underlying          09:32:38

6    wrong that plaintiffs are citing in the sixth claim is a

7    conspiracy to commit predatory lending.

8        And there is no -- first of all, my clients deny that

9    they did anything predatory and point out that each of these

10   three loans, as alleged, plaintiffs did not fall into default          09:32:56

11   right away and plaintiffs paid the loans for a while, and as I

12   think Your Honor recalls, although this is outside the record

13   for motion to dismiss purposes, Mr. Maximo paid the loan for

14   well over a year.

15       The assertion, more important for purposes of this                 09:33:13

16   claim, is there's no underlying actionable wrong.  There's no

17   cause of action for predatory lending or making an

18   inappropriate loan or a loan that's not suitable.

19       And the reason -- two reasons for that is it would

20   get very quickly into and be contrary to the principles that           09:33:31

21   lenders don't have fiduciary duties to borrowers.  They deal

22   at arm's length.  So there is no predatory lending cause of

23   action.

24       Furthermore, there's no statutory or common law basis

25   because it would be too difficult to come up with a standard           09:33:47

1  for what would be predatory or what would be suitable.  But on

2  a more fundamental level, it just simply doesn't get there

3  because there is no recognized claim for predatory lending so

4  therefore there's no underlying wrong as to which the sixth

5  claim rests.                                                    09:34:04

6        We have other issues regarding the statute of

7  limitations and some of the other counts and we'll just rest

8  on the papers for those in terms of the origination defendants.

9        If Your Honor doesn't have any questions, that will

10 be it for me.                                                   09:34:14

11       THE COURT:  Thank you.

12       MR. HEFFERON:  Thank you.

13       MR. BROCHIN:  Good morning, Your Honor.  Bobby

14 Brochin, Morgan Lewis, on behalf of two defendants, Mortgage

15 Electronic Registration Systems, Inc., which is also referred   09:34:41

16 to as MERS, and its parent corporation, MERSCORP, Inc.  It was

17 MERS who served as the beneficiary or mortgagee.  It's MERS

18 who did, in fact, serve as the beneficiary on the deeds of

19 trust for these named plaintiffs here.

20       And just for some context and by way of example,          09:35:02

21 plaintiff Cervantes, for example, borrowed monies from

22 Countrywide.  In return, Miss Cervantes provides Countrywide

23 with a promissory note to repay those monies, and she also

24 executed a deed of trust.  That deed of trust names MERS in

25 the deed of trust as the beneficiary, which is the beneficial   09:35:21

1  titleholder, as well as naming Fidelity National as the

2  trustee.

3        So MERS's role in this loan is to serve as and only

4  serve as the beneficiary, which is the beneficial titleholder.

5        Now, in regard to the complaint, I can't help but          09:35:39

6  note Mr. Nebeker's initial statement that this case is about

7  a deed of trust and these deeds of trust being void.

8        Deeds of trust, of course, are contracts, they're

9  governed by contractual principles, and if the essence of the

10 case is about voiding these void deeds you would see claims     09:35:58

11 for rescission or some claims based on mutual mistake.

12       Ten counts of this complaint makes no mention of it,

13 does not seek even in its declaratory relief to have these

14 contracts deemed void.  In all of the related matters,

15 Mr. Nebeker related to no claims for rescission or voiding the  09:36:21

16 deeds of trust have been brought, and as noted, it isn't even

17 proffered in the second amended complaint they seek to amend.

18       Counts 1 through 5 dealing with the statutory claims,

19 they are not alleged against MERS.  No violations of the

20 federal statutes have been brought claiming that MERS is in     09:36:40

21 violation of them.

22       So we turn to Counts 6 through 10, which are directed

23 against MERS and some 20 other defendants essentially for two

24 claims of conspiracy and a claim for intentional

25 interference -- sorry -- intentional infliction of emotional    09:36:57

1    distress.

2          Addressing the counts for allegations of conspiracy,

3    noting what the Ninth Circuit has to say about that is that if

4    you do bring a claim for conspiracy it must allege, and I

5    quote, "specific time, place, person involved in the alleged          09:37:12

6    conspiracies to respond to the allegations to give the

7    defendants an idea of where to respond," end quote, citing to

8    *Kendall versus Visa*.

9          Now, in looking at the first amended complaint, MERS

10   and the other 20 defendants who are alleged to have                   09:37:31

11   participated in this conspiracy do not know where to begin.

12   They cannot know where to begin to answer or respond.

13         And if you examine this complaint closely and you

14   take the legal conclusions, such as the defendants acted in a

15   concerted manner to misrepresent the terms of the loan, and          09:37:50

16   you strip those from the complaint and you strip from the

17   complaint the inflammatory allegations dealing with greed and

18   profit and the like and you strip the allegations of perfectly

19   legal conduct, that is, such as the nonreporting of promissory

20   notes, once you strip these allegations from the complaint           09:38:09

21   MERS and the 20 other defendants are not left with anything to

22   respond to.  There's no facts of a conspiracy, there's no

23   facts of the necessary torts that must form the conspiracy,

24   and there are no facts pled about an agreement to conspire,

25   all necessary.                                                        09:38:29

1          Putting aside the pleading standards that have

2    recently been articulated in *Iqbal* and *Twombly*, claims for

3    conspiracy are governed by Federal Rule of Procedure 9(b),

4    which requires specificity in order to survive a motion to

5    dismiss.                                                              09:38:44

6          And there's good reason for that.  Because a claim

7    for tort in conspiracy doesn't exist in Arizona and many other

8    places.  It's derivative.  It derives off of vicarious

9    liability to impose liability for the torts themselves for

10   those who plan and participate.                                       09:38:59

11         So courts have held a stringent pleading requirement

12   for conspiracy that you must allege this conspiracy with

13   specificity, you must allege those torts that were committed

14   with specificity, and you must allege an agreement to commit

15   those torts.                                                          09:39:16

16         Now, the plaintiffs here attempt to allege two torts

17   for the basis of their conspiracy, torts in fraud and a tort

18   of conversion, and for the conspiracy to commit the fraud, the

19   plaintiffs are going to tell you the following:

20         MERS was a sham beneficiary, number one.  Two,            09:39:30

21   they're going to tell you MERS and the MERS system was the

22   vehicle for predatory lending.

23         Now, where is that in the complaint?  Where is that

24   allegation of MERS being a sham beneficiary in the complaint?

25   If you look, it's a single allegation.  It's found in           09:39:49

1  paragraph 165-B of the first amended complaint, which is

2  based on information and belief, a qualification that already

3  signals that the stringent rules of 9(b) will not be met.

4      Allow me to read you that allegation, because it's

5  quite short, about MERS being a sham beneficiary.          09:40:10

6      Quote:

7      "The defendant conspirators intentionally created,

8  managed, operated and controlled the defendant MERS for the

9  specific purpose of MERS being a sham beneficiary in the

10  original deeds of trust securing those loans."             09:40:24

11      End quote.

12      That's it.  That's the allegation.  It's a legal

13  conclusion that MERS is a sham beneficiary.  No allegations as

14  to how MERS is a sham beneficiary.  No allegation as to what

15  makes MERS a sham beneficiary.  No allegations as to even what 09:40:42

16  a sham beneficiary is.

17      In fact, if you do look at the allegations in the

18  complaint, the sparse allegations regarding MERS's role as a

19  beneficiary, the complaint alleges that MERS was the true

20  beneficiary.  It alleges deeds of trust where MERS is         09:40:58

21  reflected as the beneficiary, as the nominee for the lender.

22  Paragraph 34, paragraph 70 of the complaint.

23      Now, curiously, the plaintiffs do not attempt to

24  attach to their pleading any of the loan documents.  They

25  don't even attach the very deeds of trust that they claim     09:41:16

1  designates MERS as a sham beneficiary.

2           We, however, attached the Cervantes deed of trust to

3  our reply memorandum, which is perfectly appropriate for the

4  Court to consider on a motion to dismiss given that it

5  necessarily is relied upon by the plaintiffs in trying to          09:41:33

6  state a claim.  Lee versus City of Los Angeles.

7           And upon examining the Cervantes deed of trust, which

8  is part of the complaint, you will see they have alleged MERS

9  is the beneficiary on the deed of trust.  They have alleged

10 MERS is the beneficiary as the nominee for Countrywide and        09:41:49

11 Countrywide's successors and assigns.

12          As I noted previous and note again, these deeds of

13 trust are contracts.  They're to be governed by contractual

14 principles.  Plaintiffs signed the deed of trust, and it

15 states, the deed of trust states, the one signed by              09:42:08

16 Miss Cervantes, and it is in bold letters for emphasis, quote,

17 "MERS is the beneficiary under this security instrument," end

18 quote.

19          It also states further down, quote, "the beneficiary

20 of this security instrument is MERS," end quote.                 09:42:25

21          It states, "Borrower Cervantes understands and agrees

22 that MERS holds legal title to the secured interest and has

23 the right to exercise all those interests of a beneficiary,

24 including foreclosure."

25          End quote.                                               09:42:44

1        Now, under the law of Arizona, specifically Section

2    33.801(1), which is titled Deeds of Trust, a beneficiary is

3    defined as, quote, "the person named or otherwise designated

4    in the trust deed as the person for whose benefit a trust is

5    given," end quote.                                          09:43:06

6        *Hatch versus Arizona* underscores that and makes clear

7    that the beneficiary, the beneficiary, as that term is used,

8    is the entity so designated in the deed of trust.

9        Now, the second prong of the plaintiffs' attempt to

10   allege a conspiracy to commit fraud comes from this claim that  09:43:25

11   the MERS system -- you're going to hear a lot about the MERS

12   system -- was somehow a vehicle for predatory lending, that

13   essentially the plaintiffs explain that the defendants made

14   illegal loans knowing that they would be forced, the

15   plaintiffs, to pay improperly disclosed interest rates and   09:43:43

16   fees.

17       But there are no allegations, none, certainly no

18   plausible allegations that *Twombly* and *Iqbal* mandate, as to

19   how MERS or the MERS system played a role in facilitating

20   these loans or was any way the vehicle for predatory lending.  09:44:00

21       The amended complaint suggests, again, upon

22   information and belief, that the MERS system was created to

23   hide the owner of the note.

24       There's no allegations, though, as to how that system

25   hides the owner of the note.  None.  Plaintiffs simply make it  09:44:19

1  up.  And they qualify it by alleging it upon information and

2  belief.

3         To state a claim under any pleading standard, you

4  need more, you need much more to state claims for fraud.

5         And, of course, the MERS system has nothing to do          09:44:35

6  with hiding the identity of the note.  The entity that has the

7  interest in the note is the lender, or the note holder, not

8  MERS.

9         Notes are negotiable and when they are sold the

10  purchaser becomes the entity with the interest in the note,    09:44:51

11  not the mortgagee, not the trustee, not the beneficiary.

12         Notes are not recorded in public records.  There's no

13  law that requires notes to be recorded and so the public knows

14  who owns the note.

15         In fact, disclosure to the borrower, as indicated by     09:45:05

16  Mr. Hefferon, is governed by federal and state law, and there

17  are no federal laws, RESPA, TILA, or the like, that require

18  MERS to disclose the owner of the note.  There's no regulatory

19  body, administrative agency that governs MERS to make no such

20  disclosures.  And, in fact, plaintiffs have not brought claims  09:45:25

21  about MERS's failure to disclose who owns the note.

22         Even the recording of the deeds of trust, not the

23  notes, even the recording of the deeds of trust, MERS is not

24  required to do that and record it in order to disclose to the

25  borrower who owns the note.  It's done to protect lien          09:45:50

interest and to record their secured interest in the public

records.  Recording of deeds of trust do not involve and they

don't relate to the recording of the debt between and among

the parties and they don't deal with the disclosure of parties

regarding the debt.                                    09:46:08

     Finally, I would mention that, apart from the

plaintiffs' failure to state a claim for liability for

conspiracy to commit fraud, they have failed to allege any

injury.

     And while this certainly presents fundamental    09:46:19

problems for Article 3 standing, it also fails to state a

claim upon which relief can be granted.

     And note the plaintiffs' sleight of hand here and

what they will say both in their response and here today.

     They will articulate to you claims for fraud.  They  09:46:35

will tell you MERS deceptively represented itself to be the

beneficiary.  They will say that the plaintiffs relied on

those representations and that those representations were not

true, again being mindful those are not contained in the

complaint anywhere.  And perhaps they know why.  Aside from  09:46:51

Rule 11 constraints, it will show clearly that they would not

have been injured.

     Because if you assume that rhetoric to be true, that

is, a fraud was committed by MERS in making misrepresentations

about it being the true beneficiary when, in fact, it was, the  09:47:06

1 plaintiffs would actually have to then say that because MERS

2 was not the beneficiary on those deeds of trust they were

3 somehow injured.

4      That doesn't make sense.  There's no plausible theory

5 of recovery for injury or damages based on the fact that MERS          09:47:20

6 was not the true beneficiary as they had promises to be, and

7 the complaint, more fundamentally, fails to state any injury

8 based on that fraud.  And for that reason alone, the complaint

9 should be dismissed.

10      Thank you.                                                       09:47:37

11      THE COURT:  Thank you.

12      MR. LANDMAN:  Good morning, Your Honor.  My name is

13 Mark Landman from Landman, Corsi, Ballaine & Ford and I'm here

14 on behalf of my client Freddie Mac but I'm presenting the

15 argument, actually, on behalf of Freddie Mac, Fannie Mae, and   09:47:57

16 the other shareholders that have been named in the seventh

17 cause of action, which is, as Mr. Brochin just explained, the

18 fraud claim.

19      This is a very broad conspiracy claim with an

20 extraordinary relief being sought, and that is to pierce the   09:48:15

21 corporate veils of several corporations in order to reach ten

22 shareholders -- over ten shareholders, including GMAC,

23 CitiMortgage, J.P. Morgan Chase, HSBC Mortgage, Wells Fargo,

24 AIG United Guaranty Corporation, National City, Bank of

25 America, Merrill Lynch, LaSalle, and these are mentioned in   09:48:37

1    the seventh cause of action.

2            And, Your Honor, when you look at this amended

3    complaint or you look at the proposed amended complaint, it

4    really is a moving target.  They want this Court to pierce the

5    corporate veil of not just MERS, Inc. that appears as the          09:48:59

6    beneficiary on the deeds of trust, but the MERS corporation

7    which these entities are actually shareholders of.

8            Now, first, Freddie Mac and Fannie Mae are

9    government-sponsored enterprises, and approximately a year ago

10   they were put in the conservatorship of the United States        09:49:21

11   Government under the Federal Housing Finance Agency.

12           Plaintiffs are trying to drag these

13   government-sponsored enterprises and these other shareholders

14   based upon a conspiracy.  The conspiracy, though, has no

15   unlawful purpose.  So under Arizona law it can't be a            09:49:38

16   cognizable conspiracy.

17           The first amended complaint makes no specific

18   allegations against any shareholder or the shareholders as a

19   group.  The closest, in looking at it, and I've read it so

20   many times, the closest I could get was, quote, "The            09:49:56

21   shareholders did knowingly and willfully conspire and agree

22   among themselves to engage in fraudulent and predatory lending

23   practice perpetrated on these plaintiffs."

24           Well, as Mr. Hefferon already explained, there is no

25   such cause of action, predatory lending, under Arizona law,      09:50:15

1  and as Mr. Brochin explained, there's nothing in this

2  complaint to tie MERS to these allegations, let alone the

3  shareholders of MERSCORP.

4        Now, what else do the plaintiffs say?

5        In paragraph 165-A, they claim that the shareholders    09:50:30

6  conspired to earn profits from originating and securitization

7  of loans by engaging in predatory and deceptive lending

8  practices as alleged above, referring to the sixth cause of

9  action, which Mr. Brochin just talked about.  Then they go on

10 to say the procuring of the loans was the illegality.  That's   09:50:50

11 paragraph 155.

12       Now, in opposition to our motion to dismiss, which

13 pointed out that we do not originate loans, in fact, both

14 Freddie Mac and Fannie Mae are statutorily barred by Congress,

15 and we've cited the statute in our brief, from originating     09:51:06

16 loans, and the shareholders that have been sued in this case

17 in their capacity of shareholders are also not originators.

18       As Mr. Hefferon explained, he told you who the two

19 originators are, and that's none of the people that I'm

20 representing here in this argument.                            09:51:22

21       Now, so what do the plaintiffs say in opposition to

22 our motion?

23       They say, one, on page 2, line 22, and this is docket

24 159, the seventh claim alleges that the originating members,

25 directors and participants of MERS conspired to use a system   09:51:38

1  to engage in fraud and predatory lending.

2          Then at page 3 they say the prime purpose of the MERS

3  system is to insulate the defendants from liability arising

4  from predatory lending practices.

5          Page 9.  Freddie Mac and Fannie Mae designed MERS to          09:51:54

6  promote deceptive and fraudulent lending practices in violation

7  of federal law.

8          Page 9 again.  Predatory practices were advanced by

9  participation in the MERS system.

10         The key, and the plaintiffs say this themselves, they      09:52:09

11  use the word linchpin.  The linchpin of their argument on page

12  10 of their opposition states, "The linchpin of plaintiffs'

13  allegation is MERS was created to hide true identity of the

14  actual beneficiary of plaintiffs' loans in order to promote

15  deceptive and fraudulent lending practices in violation of      09:52:29

16  federal law."

17         Again on page 14, the shareholders allegedly

18  promoted, engaged in predatory lending practices.

19         Here's the reality, Your Honor, that, number one, we

20  are three steps removed from originating loans.  The loan       09:52:44

21  originators, represented by Mr. Hefferon, MERS, Inc. is a

22  Delaware corporation.  Then there's MERS Corporation, which we

23  are shareholders of.

24         So there's three categories before they even get to

25  us, and we're the shareholders.  There's not one allegation     09:53:02

1   against these government-sponsored enterprises or the other

2   shareholders that would permit even coming close to piercing

3   the corporate veil.

4         To pierce the corporate veil under Delaware law,

5   which we look to because MERS, Inc. is a Delaware corporation      09:53:18

6   under Arizona's conflict of law analysis -- and, by the way,

7   Arizona law is not different -- is that you need to explain

8   how the shareholders used the corporation for fraudulent

9   purposes, and that's mentioned in the *Medi-Tec of Egypt* case

10  which is cited in our brief and on the table of authorities.      09:53:39

11        Now, whether we're called shareholders, directors or

12  creators in the proposed new complaint, there never could be

13  any set of facts that they could allege that would show the

14  shareholders' involvement in this alleged fraud.  We cannot

15  statutorily originate loans.  They don't meet the Supreme          09:53:57

16  Court's standard for Rule 8 and Rule 9(b).  There's absolutely

17  no plausibility whatsoever.

18        And, Your Honor, this has already been dealt with by

19  a court sitting in Delaware looking at the MERS Corporation

20  and MERS, Inc. in the *Trevino* case which we've cited, which      09:54:13

21  rejected similar allegations that were attempting to pierce

22  the corporate veil.

23        The plaintiffs' claims must be plausible under

24  *Twombly* and *Iqbal*.

25        They relied on outdated cases in opposition to our           09:54:27

1  brief, including the *Conley* case, which is no longer good law,

2  and then they say the plaintiffs' opposition is relying on

3  the, quote, low standard on page 4 of their brief to survive a

4  motion to dismiss.

5        Well, that's not true, and particularly when you're            09:54:42

6  talking about fraud under 9(b) standards.

7        MERS -- talk about plausibility.  MERS was created in

8  1993.  They would have this Court believe that MERS was

9  created in 1993 by Freddie Mac, Fannie Mae and the other

10 shareholders or creators or whatever they're now calling them   09:54:57

11 in order to facilitate predatory lending practices that

12 occurred some 10 years later.  It's simply implausible.

13       Then as Mr. Brochin pointed out, how do they answer

14 this?  They say MERS is a sham.  And they say that on page 3,

15 page 4, page 6, and page 11.  They can say it a million times.   09:55:15

16 It doesn't meet the *Twombly/Iqbal* standards.

17       Plaintiffs then use vague allegations that Freddie

18 Mac and Fannie Mae are the prime architects.  This is the

19 exact same allegation that was rejected by the U.S. Supreme

20 Court in *Iqbal against Attorney General Ashcroft*, who they     09:55:32

21 called the principal architect in that case, the plaintiffs.

22       Plaintiffs then say to Your Honor at page 15, line 9,

23 docket 159, again, their opposition brief, that the usual

24 rules don't apply to shield shareholders.  They don't cite any

25 cases for that proposition.  They don't cite any facts.          09:55:50

1   There's nothing in their complaint.  The proposed complaint.

2          What do they do?

3          They want Your Honor to ignore the 9(b) standards

4   regarding fraud that needs to be pled with particularity.

5   They want Your Honor to ignore that all the defendants are          09:56:03

6   lumped together, over ten of us.  We have no idea what we did.

7   They want to ignore that they need specific agreement to

8   commit the fraud.  The who, what, when, and how of that

9   agreement.  No facts.

10          And, Your Honor, it simply is time to put an end to         09:56:20

11   this.  MERS was created for a legal purpose.  And if you want

12   to know where I'm getting that from, it's paragraph 155 of

13   their complaint, which says that MERS was created for the

14   legal purpose of packaging loans.

15          This case needs to be brought to an end.  This is the       09:56:38

16   sixth case -- among the six cases they have filed.  They've

17   had numerous opportunities to file amended complaints in

18   Nevada and Central District of California where they just

19   amended.  There's another case pending down in Tucson in

20   federal court.                                                      09:56:54

21          As the Supreme Court said in *Iqbal*, Rule 8 does not

22   unlock the doors of discovery for plaintiffs armed with

23   nothing more than vague assertions.

24          Then you heard today, Your Honor, this new proposed

25   amended complaint doesn't even cut it so now they want to have     09:57:07

1  a fourth shot at doing this, and if you count the other six

2  cases among which they've already had five cases among which

3  they've had several amended complaints, they get ten chances

4  to bring these government service enterprises -- sponsored

5  enterprises into this case and the shareholders with no facts?    09:57:24

6  They will never be able to state facts against these clients

7  that I'm representing today.

8       Rule 9(b), as the *Bly-Magee* case from the Ninth

9  Circuit stated, was designed to prevent complaints from being

10  used, as plaintiffs would like to here, as a pretext for    09:57:42

11  discovery of unknown wrongs.  That's essentially what you

12  heard from plaintiffs' counsel today.

13       Rule 9(b) is designed to protect defendants, according

14  to the Ninth Circuit in the *Bly-Magee* case, from harm that

15  comes from being subject to fraud charges and to prohibit    09:57:57

16  plaintiffs from unilaterally imposing upon the courts, the

17  parties, and society the enormous social economic costs absent

18  some factual basis.

19       For these reasons, Your Honor, we ask that our motion

20  be granted.    09:58:12

21       Thank you.

22       THE COURT:  Thank you.

23       MR. REICHNER:  Good morning, Your Honor.  Henry

24  Reichner, Reed Smith, for GMAC.

25       May it please the Court.    09:58:21

1          I am here to speak for the members that include GMAC

2   Mortgage and GE Money Bank and others.

3          I want to make four points.

4          1.  The plaintiffs and GMAC are complete strangers.

5   GMAC was not involved, not alleged to be involved in the          09:58:39

6   origination, is not alleged to have owned, is not alleged to

7   have serviced, is not alleged to have foreclosed on any of the

8   named plaintiffs' loans.  These facts are not going to change.

9          Accordingly, these plaintiffs lack standing under

10  Article 3 and under *Warth v. Seldin* to assert claims on behalf   09:59:01

11  of absent class members when these plaintiffs do not have a

12  direct claim against GMAC or any others.

13         Second point.  Conspiracy.

14         Now, I mentioned GMAC Mortgage as being a member.  If

15  you examine paragraph 15 of the amended complaint, plaintiffs      09:59:21

16  assert that GMAC Mortgage, through an affiliate, is a director

17  or shareholder of MERS.  That means you have to pierce through

18  another corporate veil to get to GMAC Mortgage.

19         At the end of the day, the only thing these

20  plaintiffs have alleged with regard to GMAC Mortgage or GE         09:59:45

21  Money Bank is that they are members of MERS.

22         We have cited a number of cases on page 11 of our

23  brief that basically say mere membership in an organization

24  does not make you a conspirator.

25         You take a look at footnote 12 in *Twombly*.  They're       10:00:07

1   saying the same thing there.  Justice Souter.

2          That's point two.

3          Let's assume, though, for point three, that there was

4   some conspiracy.

5          The claims here flow from the origination of the                    10:00:22

6   loans and nowhere else.  MERS had nothing to do with it.  In

7   their complaint they allege that MERS was created to hide the

8   identity of the originators and the brokers of their loans.

9   Well, that was absurd and they've backed off of that.

10         Now they're saying that MERS was created to hide the               10:00:50

11  owner of their loans.  Well, that's absurd, too.

12         They knew who their servicers were.  They knew who

13  they were supposed to send their money to.  Those servicers

14  had obligations under RESPA to respond to qualified written

15  requests under 12 U.S.C. 2605 and they could have asked the               10:01:14

16  servicers who owns my loan.  Under TILA they have a similar

17  obligation.

18         What's the whole point of this concern about hiding

19  the identity of the owners?  It purportedly prevents these

20  plaintiffs from attempting to modify the loans that they                  10:01:35

21  entered into.  There is no duty under Arizona law to modify

22  the loan, and we've cited to you the *Villegas* case in our

23  brief.

24         That's point three.

25         So the MERS system did not cause any damage to these              10:01:59

1  plaintiffs, and thus, not only do the plaintiffs lack standing

2  to assert a direct claim on behalf of absent class members

3  against GMAC but they also lack standing to assert a claim

4  under this MERS conspiracy theory because they have not

5  suffered an injury as a result of it.                        10:02:19

6       4.  The proposed amendment changes nothing, and, in

7  fact, as modified here it changes nothing.  There's no harm

8  caused by the securitization of these loans.

9       There's been a secondary market in the United States

10 since at least 1938 established by the federal government.    10:02:42

11 Since 1981 Fannie Mae has been issuing mortgage-backed

12 securities.  This sort of activity is proper and consistent

13 with legal rights, and, in fact, it was, at least up until

14 recently, advancing governmental goals.

15      There are more likely explanations for participating    10:03:07

16 in the secondary market than participating in a conspiracy

17 apparently formed in 1983 that these lenders intended would

18 cause everyone to go into default and apparently contemplated

19 that there be some bailout.  It's absurd, implausible, and

20 it's not going to change by any amendment.  It's utterly       10:03:29

21 futile as to the members, the shareholders.

22      Thank you, Your Honor.

23      THE COURT:  Thank you.

24      MR. PITTINSKY:  May it please the Court.  Good

25 morning, Your Honor.  David Pittinsky representing National    10:03:59

City Bank, National City Mortgage, National City Corporation,
and PNC Financial Services Group, Inc.

Your Honor, we filed two discrete motions for these
defendants, and if I may address them both.

The first motion was filed on behalf of National City    10:04:19
Corporation and PNC Financial Services Group, Inc.  PNC is a
complete stranger to this.  All it did, Your Honor, was
acquire National City Corporation through merger effective
December 31, 2008, and that's actually pleaded, Your Honor, in
the first amended complaint by the plaintiffs so it's not in    10:04:41
dispute.

Now, in the first amended complaint, Your Honor, we
point out in this motion that there's not a single allegation
of any wrongdoing by either National City Corporation or PNC.
They're not named in any of the nine counts of the complaint    10:05:02
where they have the caption first claim for relief, second
claim for relief, et cetera.  They're not named as defendants
there and there are no allegations of any specific wrongdoing
by them.

In response to our motion, plaintiffs said that this    10:05:18
absence of allegations was due to an inadvertent scrivener's
error.  That's the quote, Your Honor, from their brief, an
inadvertent scrivener's error.

So what they're saying, Your Honor, is their failure
to level any accusations against those two defendants in their    10:05:36

1  229-paragraph, 62-page complaint was an inadvertent scrivener's

2  error.

3          Now, that's their primary response.  They give many

4  other excuses, Your Honor, which we address specifically in

5  our reply brief so I won't repeat them here, but I will point          10:05:52

6  out to Your Honor that in their second amended complaint, and

7  this demonstrates the futility of permitting them leave to

8  amend at least against my two clients, in their second amended

9  complaint, which has nine claims for relief, those two

10 defendants are only named in two of the counts, only in two of          10:06:13

11 the counts in the second amended complaint.

12         And the first time they're mentioned is PNC, not

13 National City Corporation, but PNC, is named as a defendant in

14 the first claim in the second amended complaint alleging a

15 claim under the Truth in Lending Act, TILA.  The only          10:06:34

16 allegation in that claim against PNC is the allegation in

17 paragraph 98 that it is a successor in interest to National

18 City Bank.  National City Bank.

19         Now, Your Honor, it's not a successor in interest to

20 National City Bank.  It's a successor in interest to National          10:06:56

21 City Corporation.  And that's demonstrated by the allegation,

22 again, in their own second amended complaint, paragraph 24,

23 where they specifically allege that PNC is the successor in

24 interest to National City Corporation.

25         So the only way they try to get PNC in the first          10:07:15

1   amended complaint, and again, keep in mind, Your Honor, PNC

2   didn't get involved in this until December 31, 2008, and all

3   of these loans, the loans to the then plaintiffs well before

4   that, is by saying they are successor in interest to National

5   City Bank, which is named as a defendant in the first claim.       10:07:35

6        So there's clearly no merit to that allegation

7   because they're not a successor in interest to National City

8   Bank.  National City Bank is a subsidiary, an operating

9   subsidiary of National City Corporation.

10       So then the only other claim for relief in the second      10:07:52

11  amended complaint against National City Corporation and PNC is

12  found in the sixth claim, the sixth claim for relief, which

13  states a claim against MERS of -- again, alleged claim of

14  fraud against MERS and anybody who was involved in MERS.

15       And I won't repeat all the arguments that have been       10:08:12

16  made about their failure to plead in compliance with Rules 8

17  and Rules 9(b) but I will simply point out to Your Honor that

18  in the second amended complaint the plaintiffs allege that the

19  participants in the conspiracy were securitizers, lenders, and

20  servicers of the loans, and in those allegations where they     10:08:36

21  define who a securitizer was and who a lender was and who a

22  servicer was they don't name either PNC or National City

23  Corporation.

24       So their own allegations which they say lay out the

25  conspiracy don't name again these two defendants.               10:08:55

1        So, Your Honor, there's really no basis for these two

2   defendants to be in this case and we request that they be

3   dismissed.

4        If I may, I'll now proceed to the second motion.

5        The second motion, Your Honor, is on behalf of         10:09:07

6   National City Bank and National City Mortgage, and they are

7   named in the first amended complaint as defendants.  And we've

8   set forth in our reply brief the Ninth Circuit decision in the

9   *Silvas* case.  It's a 2008 decision by the Ninth Circuit and

10  it's on virtually identical facts to the allegations made by    10:09:27

11  the plaintiffs here.

12        The only difference between the Ninth Circuit

13  decision in *Silvas* and what I'm arguing today, Your Honor, is

14  that the Ninth Circuit decision in *Silvas* was done under the

15  Homeowners Loan Act and the regulations of OTS.  We're here     10:09:43

16  under the National Bank Act and the regulations by the OCC,

17  the Office of the Controller of the Currency.  That's the only

18  difference.

19        And there's no question that the National Bank Act

20  and HOLA, the Homeowners Loan Act, are on parallel tracks and   10:09:59

21  the OCC regs and the OTS regs are on parallel tracks.  They all

22  deal with real estate lending.

23        And what *Silvas* said, Your Honor, and they said

24  federal preemption, federal preemption, prevents a state claim,

25  and in *Silvas* it was a claim under the California unfair       10:10:21

1   competition law, federal preemption preempts these claims from

2   going forward, and they gave two reasons, both of which apply

3   here, Your Honor.

4           The first reason was that in *Silvas,* and again, it's

5   a 2008 Ninth Circuit decision, in *Silvas* the plaintiffs                10:10:41

6   alleged that their state law claim under the California unfair

7   competition law was predicated, predicated, on violations of

8   federal lending law, and in that case TILA, the Truth in

9   Lending Act, and the Court squarely held, squarely held that

10  that being the case, the entire claim was preempted because of         10:11:04

11  field preemption, what the Court called field preemption.

12          Here, too, just as in that case, here, too, you have

13  the state law claims, and that's what I'm addressing here for

14  federal preemption, the state law claims, they are all

15  predicated on violations of federal lending law.  Because they         10:11:23

16  incorporate by reference each of the state law claims,

17  incorporate by reference the violations of federal lending law

18  which are contained in Counts 1, 2, 3 and 4, the ones that

19  Mr. Hefferon addressed.  So they have based, through

20  incorporation by reference, their state law claims on their            10:11:47

21  federal lending claims.

22          Now, to prove that that's not an inadvertent

23  scrivener's error, Your Honor, to prove that's not an

24  inadvertent scrivener's error all you need do is look at the

25  claims in the sixth, seventh and tenth claims in the                   10:12:11

complaint, which are some of the state law claims where they

repeat, they actually repeat in those claims in paragraphs

153, 154, 155, 169, and 220, they actually repeat specifically,

they don't incorporate by reference, they repeat that these

claims are based on violations of the federal lending law by          10:12:33

the defendants.

      So there's no question they've premised, at least in

part, their state law claims on violations of federal lending

law.  Therefore, just as the Ninth Circuit found in *Silvas*,

these claims are federally preempted.                                 10:12:52

      Now, the Ninth Circuit went a step further because it

had a second reason for why claims were preempted in *Silvas*,

and that was where the claims that are alleged in the

complaint clearly are similar to the very areas covered by the

regulations issued, in that case, by the OTS, here OCC.  So          10:13:14

that the claims of improper lending and improper servicing are

similar to the actual federal regulations issued by OCC then

they are preempted.  That's what the Court held in *Silvas*.

      And here, here you have claims, and all you need do

is look at paragraphs 34 through 81 and then 89 through 97 and        10:13:42

103 through 116 where they specifically allege that National

City Bank failed to properly disclose the APR, the annual

percentage rate, the finance charges, the amount financed, the

number of payments, and other terms relating to plaintiffs'

mortgage loans.                                                       10:14:07

1        Well, we have quoted, we have quoted in our brief the

2   very provisions in the OCC regs which cover those very

3   subjects, those exact same subjects, and therefore, therefore,

4   that means that these claims are preempted.

5        Now, their only response to our reliance on the                10:14:28

6   regulations is that they say state laws that incidentally

7   affect federal lending by national banks, that only

8   incidentally affect it, are somehow exempt from federal

9   preemption.

10       But the *Silvas* court said on that point, Your Honor,        10:14:49

11   and this is -- there's no doubt about this being what they

12   held.  What they held was that once you have this mirror image

13   between the claims in the complaint about the nature of the

14   lending and the coverage of the regulations, of the federal

15   authority, you don't even look at the incidental effect          10:15:06

16   exception.  It's irrelevant.  Don't even look at it.  So that

17   doesn't apply.

18       And, Your Honor, we've cited two -- several decisions

19   but two I'll just mention by district courts which agree with

20   *Silvas,* of course, both of them in the Ninth Circuit.  One is   10:15:25

21   the *Fultz* case by the Western District of Washington, which is

22   a case, Your Honor, where the very same defendants I represent

23   here today, National City Bank and National City Mortgage,

24   moved to dismiss on the grounds of federal preemption, and

25   they were granted where the state claims were for fraud, fraud   10:15:41

1  in the inducement, infliction of emotional distress, unfair

2  practice under the Washington consumer protection law, very

3  same kind of claims that you have here, and the court

4  dismissed them on federal preemption grounds.  And that was a

5  case involving the OCC regs and National Bank.                    10:15:58

6          There's also the 2008 decision by the Central

7  District of California in the *Nava* case.

8          And if I may, Your Honor, here's a decision which

9  came out after we briefed, if I may hand this up?

10         THE COURT:  You may.                                      10:16:14

11         MR. PITTINSKY:  Your Honor, this is an August 4, 2009

12  decision by the Southern District of California in the *Rivera*

13  case, and if you -- if you turn to the third page of the

14  decision, the third page of the decision, and I'm sort of

15  loath to read from opinions, Your Honor, but it so succinctly   10:16:45

16  summarizes my argument on preemption, and you'll see the court

17  in the middle of the left column says:

18         "Plaintiff's allegations revolve entirely around the

19  processing, origination and servicing of the plaintiff's

20  mortgage, the terms of credit, including amortization of loans  10:17:05

21  and the deferral and capitalization of interest and adjustments

22  to the interest rate, balance, payments due, or term to

23  maturity of the loan, and the adequacy of disclosures made by

24  the defendants in soliciting and settling the loan.

25         "Because the state laws on which plaintiffs rely, as     10:17:25

1   applied, would regulate lending activities expressly

2   contemplated by..."  And that's a section from HOLA, Your

3   Honor.  We've cited the very same section from the National

4   Bank Act and the OCC regulations.  "...the claims are

5   preempted."   And they cite *Silvas*.                      10:17:39

6          And at the end of that paragraph they say:

7          "There is no need for the court to proceed to the

8   second step of the analysis."

9          That's the analysis that involves the incidental

10  effect exception.  Once you find the similarities between the   10:17:52

11  claims and the regulations, you don't even look at that.

12         So on that basis, we request that you find federal

13  preemption and dismiss the claims against National City Bank

14  and National City Mortgage.

15         Now, we've also argued that these claims should be   10:18:06

16  dismissed on the grounds of standing to sue because neither

17  National City Bank nor National City Mortgage was involved in

18  the origination of the loans.

19         And we've cited all the decisions from the Supreme

20  Court and the Ninth Circuit which clearly hold that because   10:18:24

21  standing to sue raises a question as to the court's

22  jurisdiction to proceed to the merits of the dispute you do

23  not consider the class action allegations, they are

24  irrelevant.

25         And so here the question is whether these named   10:18:41

1    plaintiffs have asserted claims that they have standing to

2    bring against National City Bank and National City Mortgage,

3    and we took the position in our motion that obviously they

4    didn't because we did not originate the loans.

5            The only response to that motion is the argument that          10:18:58

6    National City Bank really is involved because First Franklin

7    was a division of National City Bank and National City

8    Mortgage when it made the loans and therefore they can sue us

9    as well as First Franklin.

10            And we pointed out, we pointed out that, first of          10:19:22

11    all, in their complaint, although there were some paragraphs

12    where they said it was a division, there were other paragraphs,

13    33 other paragraphs, where they said it was a subsidiary.

14            And moreover, we attached, we attached to our motion

15    an opinion of the OCC which clearly designated, clearly          10:19:41

16    designated National City Bank and First Franklin as sister

17    subsidiaries, sister subsidiaries, and we ask the Court to

18    take judicial notice of that in connection with our motion.

19            So we move to dismiss also on the grounds of standing

20    to sue.          10:20:04

21            Thank you very much.

22            THE COURT:  Thank you.

23            MR. THOMASON:  Tim Thomason, Your Honor, on behalf of

24    Tiffany & Bosco.

25            Tiffany & Bosco are sued in this case in its status,          10:20:22

1   and it was actually Michael Bosco of Tiffany & Bosco, who's

2   the trustee, under the deed of trust.

3        Your Honor, I would submit that the pleadings in this

4   case and this hearing today demonstrate who this dispute is

5   between.  This dispute is between a borrower and a lender or a        10:20:36

6   lender and a bunch of related parties.  The trustee is simply

7   not a necessary party, nor is it a proper party under Arizona

8   law.  The plaintiffs can obtain full and effective relief,

9   should they prove their claims, without the trustee being

10  named.                                                               10:20:57

11       In fact, under A.R.S. Section 33-807, the trustee is

12  bound by the determination in a dispute between the borrower

13  and the beneficiary.  If there was wrongdoing here, then the

14  plaintiffs will be allowed to recover either damages or

15  injunctive relief, whatever they are entitled to.                    10:21:14

16       Your Honor, a trustee under a deed of trust simply

17  holds bare legal title with a power of sale in the event of a

18  default.  It is not a real party in interest to a dispute

19  between a borrower and a lender.

20       And Arizona law, 33-807, provides very clearly that            10:21:28

21  the only action in which a trustee is a proper party is one

22  where there is alleged a breach by the trustee of a provision

23  of the deed of trust or the Arizona deed of trust statute.

24  And the statute clearly says that the trustee is entitled to

25  be immediately dismissed and recover costs and fees in any           10:21:46

1  other case in which it is named.

2        Trustees are not supposed to be named in cases like

3  this.  The complaint in this action, Your Honor, does not

4  identify a breach by the trustee of a provision of the deed of

5  trust or the deed of trust statute.  They have identified no          10:22:03

6  such claim.  All they have done in their complaint and

7  response to our motion is piggyback onto the allegations they

8  have made against the other defendants, which is exactly, Your

9  Honor, why we shouldn't be here and we shouldn't be in this

10 case.                                                                 10:22:24

11       The claims here, the legal claims, are that the

12 lender and its successors and related parties engaged in

13 wrongdoing.  They have identified no independent wrongdoing by

14 my client.

15       They have, in response to our motion, said a couple        10:22:35

16 of things.  They've said, well, that my client somehow

17 breached a, quote, duty of fairness.

18       Well, Your Honor, parties may have a duty to be fair

19 but I'm not sure that they're -- in fact, I know there isn't a

20 legal cause of action, but more importantly, they have             10:22:48

21 identified in the complaint no facts to suggest that Tiffany &

22 Bosco somehow was not fair to the plaintiffs.

23       They have also said in response, well, there's an

24 issue here as to whether or not Tiffany & Bosco facilitated

25 fraud.

1      Well, Your Honor, once again, they have identified no

2  facts whatsoever, and I would submit no facts that anybody

3  engaged in fraud, but certainly no facts under the 9(b)

4  standards or any facts at all that my client somehow

5  facilitated fraud.                                              10:23:19

6      They've also alleged, well, there's an issue here as

7  to whether or not Tiffany & Bosco was properly appointed as

8  trustee under the deed of trust.

9      Well, Your Honor, Tiffany & Bosco is sued in this

10 case because of its status as trustee.  If it was not validly  10:23:32

11 appointed, and we would submit they were, but if they weren't,

12 so be it.

13     Once again, this is a dispute between the borrower

14 and the beneficiary, and if they have to litigate an issue as

15 to what the beneficiary was entitled to do, including          10:23:46

16 appointing a trustee, then they can litigate that issue.  We

17 are bound by the outcome, but we do not need to be and, in

18 fact, should not be a party to this case.

19     And Tiffany & Bosco, when it was appointed as trustee,

20 or actually, again, Michael Bosco, had no duty to investigate  10:24:03

21 the validity of his appointment.  Mr. Bosco is a qualified

22 trustee under Arizona law and was appointed by a duly

23 authorized beneficiary.  But, in any event, we don't need to

24 get to that point right now.  We simply don't need to be a

25 party to this and we're bound by the outcome.                  10:24:22

```
1            Your Honor, another case in this very district, the
2     Mansour case, which is 618 Fed.Supp.2d 1178, was very similar,
3     and we cited that in our reply brief and we had inadvertently
4     just given the LEXIS cite but it's 618 Fed.Supp.2d 1178, where
5     there was a dispute between a borrower and MERS and a bunch of     10:24:43
6     entities just like this and they included the trustee and the
7     court said there's no allegation in the complaint that the
8     trustee breached a provision of the deed of trust or the deed
9     of trust statute.
10            That's exactly the way it is here.  The trustee under     10:24:59
11    a deed of trust is bound to follow the terms of the deed of
12    trust and the statute.  There is no allegation that my client
13    violated either and they should be dismissed.
14            Thank you, Your Honor.
15            THE COURT:  Thank you.                                     10:25:13
16            MR. SHELY:  Thanks, Your Honor.  That does conclude
17    the defendants' initial presentation.
18            THE COURT:  The first round?
19            Very well.  Then we'll take a 15-minute recess and
20    then hear from plaintiffs.                                         10:25:29
21            (Proceedings recessed at 10:25 a.m.)
22
23            (Proceedings reconvened at 10:40 a.m.)
24            THE COURT:  Thank you.
25            Mr. Nebeker, you may proceed.                              10:40:59
```

1      MR. NEBEKER:  Thank you, Your Honor.

2      Your Honor, I'll try and go in reverse order just

3 flipping back through my notes and start with the Tiffany and

4 Bosco motion and end up with the originators' arguments at the

5 end.                                                              10:41:15

6      With respect to Tiffany & Bosco, quite frankly, we

7 didn't take it lightly to sue another lawyer in this town

8 because, quite frankly, that's not something that I like to do

9 and people tend to question whether or not you need to.  But

10 in this case, we did.                                            10:41:31

11     THE COURT:  Pick one of those two mics, would you,

12 Mr. Nebeker.

13     MR. NEBEKER:  I'm sorry.

14     THE COURT:  Just pick one of them, move either left

15 or right but you've got to speak into a mic.                     10:41:40

16     MR. NEBEKER:  How's that?

17     THE COURT:  Thank you.

18     MR. NEBEKER:  In our situation, we had a client whose

19 house had been foreclosed upon and was in the verge of being

20 evicted and we had other clients who were being foreclosed      10:41:53

21 upon and were on the verge of having their houses sold.  It

22 was necessary to sue the trustee under those circumstances to

23 put that to rest and to stop it.

24     In addition, though, our premise, as I've told this

25 Court, is that the deed of trusts are void, that they are not   10:42:14

1  valid deeds of trust, and therefore the trustee is not a true

2  trustee.

3       And that sort of is demonstrated by the history of --

4  well, the problems that we have is demonstrated by the -- I

5  guess chain of title would probably be the wrong term to use          10:42:36

6  but the way the Almendarez, Cervantes and Maximo houses came

7  about.  Initially they borrowed from either Countrywide or

8  National City Bank, appointed MERS ostensibly as the deed

9  of -- as the trustee of the deed of trust -- excuse me --

10 beneficiary and then the beneficiary, MERS, assigns to               10:42:59

11 somebody else.  In all these cases, they assigned to someone

12 other than the original loan lender of the money and

13 ultimately what they did was then they appoint Mr. Bosco as

14 trustee.

15      And that sort of takes us back to the overall case             10:43:19

16 that we're advocating here before the Court today, and that

17 is, we're grouping everybody together, because it's sort of

18 like the game where you try and hit something on the head,

19 something else pops up each time, the groundhog pops up in

20 another place, and that's what we're sort of dealing with here      10:43:39

21 because we've got all of these what we call co-conspirators

22 who could be, theoretically, nominated or transferred the

23 beneficial interest if MERS had it.  We don't know where it's

24 going to come from and who's going to end up on first prior to

25 the trustee sale, and I think our papers validly demonstrate        10:44:00

1    that.

2          But with respect to Tiffany & Bosco, they were a

3    necessary party.  We needed to bring them in.  We've alleged

4    enough in our complaint to survive the motion to dismiss

5    stage.  We've alleged that they didn't act in good faith, they          10:44:18

6    had a duty to investigate whether or not the MERS system was

7    valid, whether they received a valid assignment, those types

8    of things that I think take us beyond the motion to dismiss

9    stage.

10          With respect to the federal preemption argument, we          10:44:37

11    will concede that federal preemption, if we were only bringing

12    federal claims, would certainly be a valid point that the

13    plaintiffs -- defendants are making.  The problem here is that

14    that's not all we're making.

15          And the case that was handed to the Court, the          10:45:02

16    *Wachovia -- Rivera versus Wachovia* case, certainly

17    demonstrates that as well.  Because if you look at what the

18    allegations are in that complaint and the allegations of the

19    plaintiff in that case, it's different than what we're

20    alleging.          10:45:25

21          In our case, we've got the allegations that the deed

22    of trust is void and that the foreclosures are wrongful.  That

23    has nothing to do with federal preemption.  Because we're

24    dealing with state law rights.  Federal law doesn't dictate

25    how foreclosures take place.  State law does.          10:45:45

1          THE COURT:  I'm sorry.  Where is wrongful foreclosure

2     pled in the complaint?

3          MR. NEBEKER:  As we talked about, Your Honor, it's

4     part of the MERS conspiracy, if you will, and again, it may

5     not be artfully drafted, as I spoke when I first got up here,      10:46:05

6     but that is certainly -- part of the MERS conspiracy is that

7     our allegations say that the MERS system promulgates a system

8     by which foreclosures take place that are wrongful because the

9     deeds of trust upon which those foreclosures are predicated

10    are void and therefore without legal justification.               10:46:33

11         So what we're looking at is a situation where federal

12    preemption -- if TILA were our only -- and RESPA were our only

13    allegations, then federal preemption might stand before you,

14    but we think that based upon the allegations in the complaint,

15    both the first amended and the second amended complaint, we       10:47:00

16    certainly have a situation where this Court can look to the

17    allegations and conclude that the federal preemption doctrine

18    certainly won't apply under the facts as alleged.

19         And again, the *Rivera* case certainly is demonstrative

20    of that because that case has the typical allegations that you    10:47:21

21    get when someone sues their lender and says but for your

22    lending practice I wouldn't have borrowed.

23         We're taking it another step further.  We're taking

24    it to the real cause of action deals with whether or not they

25    can foreclose and whether or not they can come after our          10:47:45

1  clients on the note.

2       GMAC came up and primarily argued that standing is --

3  that the Court has no basis to conclude that the plaintiffs

4  have standing, that the plaintiffs and defendants are

5  strangers, that there's a conspiracy, cannot be extended to          10:48:20

6  them, and the claims only flow from the originators.

7       Again, that's not the case.  All foreclosures need to

8  be stopped, and that's what we're attempting to do.  If the

9  loans had been properly made in the first place, we wouldn't

10 be seeking relief, but we aren't seeking modification as GMAC         10:48:42

11 was alluding to.

12      But with respect to the conspiracy, we believe that

13 the circumstantial evidence, the fact that all of the members

14 are participating in the various -- foreclosures throughout

15 the various states, that certainly is circumstantial evidence        10:49:09

16 enough to get us beyond the pleading stage.

17      The attachment to the deed of trust filed by MERS, as

18 the Court is aware, this is a motion to dismiss, but since

19 they've attached it, it reads MERS is Mortgage Electronic

20 Registration System, Inc., MERS is a separate corporation that       10:49:54

21 is acting solely as the nominee for lender and lender's

22 successors and assigns.

23      That's the problem and that's really the gravamen

24 again of our complaint.

25      The problem begins when you don't have a true                   10:50:18

1   beneficiary and the problem begins when you split the

2   beneficiary from the note, and in our second amended complaint

3   it sets forth all of the allegations necessary to conclude

4   that based upon what our case is is that the foreclosure

5   procedures are improper.                                    10:50:47

6        And what we're alleging is that the MERS system's own

7   rules and regulations, as we set forth in the complaint, set

8   forth the fact that they never take a beneficial interest in

9   the deed of trust and therefore it is void from the beginning

10  and it does reach the stage where they can't then assign it   10:51:21

11  once they get beyond -- once they get to the point where they

12  think they need to foreclose, and that really sort of starts

13  the issue.

14       Fannie Mac and -- excuse me -- Fannie Mae and Freddie

15  Mac said that to pierce the corporate veil we have to pierce  10:51:41

16  several corporate veils before we get there.

17       In our case, we're dealing with conspiracy, and I

18  believe that under the circumstances and the circumstantial

19  evidence we don't need to pierce corporate veils; all we need

20  to do is show that these -- and allege, because we're still at  10:52:03

21  the motion to dismiss stage -- that as conspirators they are

22  all liable and they are all part of the conspiracy to

23  basically fuel the feeding frenzy on the drive to securitize

24  loans.

25       And again, that's what our complaint alleges in         10:52:29

various forms and various causes of action, is that the icing

on the cake, if you will, is the predatory lending, and that's

the by-product of this desire, Your Honor, to securitize loans

and to get the loans off the books initially, because the

banks really had no -- have no reason to follow their own          10:52:53

underwriting guidelines.

        And in effect, that is the argument that we make that

we believe takes it beyond the federal preemption argument,

gives us standing and allows us to proceed.

        Because what we're dealing with here are loans that       10:53:12

are made without any real fear that they'll ever be paid back.

What we're dealing with is banks by using the MERS system that

enables them to create a system by which they don't have to

record who has the deed of trust, who has the beneficial

interest, and who the note is actually owed to.                    10:53:49

        And it's this fact that when they make the loan and

move from the loan to selling the loan that the banks have

been made whole, and again, that's part of the allegations

that we've made in the various causes of action, is that the

notes, ultimately, we don't know who the money is owed to, and    10:54:11

then this goes back to our clients and, as I said, the chain

of title, the chain of title dealing with who will be the

nominee from MERS ultimately to foreclose that then appoints

Mr. Bosco.

        We don't have to pierce the corporate veil to get         10:54:32

1    there.  We have standing to make these claims.  The lawful

2    purpose of securitization is being accomplished by illegal

3    means, and that's really where we're trying to get to.

4         The TILA, the RESPA, those types of claims, are only

5    part of what the whole claim is about.  The bigger part is          10:55:01

6    that under state law, under state -- under common law that

7    these -- this method by which they've devised to fuel, number

8    one, the desire to securitize and sell loans backed by real

9    estate, only then now turns around and now we've got

10   situations -- what we believe and I think we've alleged that       10:55:37

11   we're now dealing with a situation where many of the notes

12   that are ostensibly not being paid have been discharged

13   through various means, either through the TARP money, through

14   the money that AIG paid the investors or through settlements

15   that the TARP money was used for.                                  10:56:03

16        So when you turn around and you end up with an

17   argument that only the originators of these particular loans

18   are the ones that should be before this Court, it stands on

19   its ear the fact that these really are the icing on the cake.

20        We're in the process, as you can imagine, because            10:56:31

21   we've been -- I guess word has gotten out -- we're in the

22   process of filing even more lawsuits, trying to stop the

23   foreclosure mills, which is the by-product of the loan

24   securitization mills of the 2005 time frame.

25        The Fair Housing Act allegations, the RESPA               10:57:00

1  allegations, the TILA allegations, again, basically are part

2  and parcel of what evidences the wrongful conduct, but it

3  isn't the only wrongful conduct and it doesn't subsume the end

4  of the game whereby the now foreclosures are being done

5  improperly.                                                    10:57:30

6        There was a comment about statute of limitation, and

7  we were told that that would just be submitted on the briefs,

8  but again, what we're dealing with here is a motion to dismiss

9  and it's not a motion for summary judgment, as many of these

10 things seem to set forth, but our response to the statute of  10:57:53

11 limitations is that they were equitably tolled, that

12 ultimately our clients didn't realize what had happened to

13 them until long after the statute of limitations had run.  So

14 the discovery and the equitable tolling, again, is based upon

15 the conduct of the defendants in not supplying the proper      10:58:15

16 documentation to the clients so that they would have known

17 that they had certain time frames within which to make those

18 claims.

19       I'm trying to go back through it again through my

20 notes so I don't forget something, Your Honor.                 10:58:59

21       MERS basically said that nowhere in our pleading was

22 there a request for rescission and that if there was a

23 rescission request it should have been made and really what

24 we're asking for is rescission.

25       I think what we're asking for is reformation, which      10:59:26

1    is a little different.  Reformation is based upon the fact

2    that the predicated activity created a loan that shouldn't

3    have been made in the first place on the basis that there were

4    no underwriting standards being followed such that my clients

5    ultimately were given loans that they couldn't qualify for.    10:59:54

6            To seek rescission would put us in more of a

7    conflicting situation with our own clients.  Because one of

8    the things, again, that we're looking to do through all of

9    these lawsuits is to stop the foreclosures, and you can't get

10   that if we only represent three plaintiffs.  We might be able   11:00:25

11   to stop these houses but we certainly couldn't stop it as a

12   class.

13           And that's why MERS is arguing that, well, they

14   should be seeking rescission and why aren't they?  Well, they

15   know full well that that's not a class claim.                   11:00:44

16           And ultimately, what's needed is to stop all the

17   foreclosures so that someone such as yourself, Your Honor, or

18   some other judge is looking at the process by which the

19   foreclosure mills, if you will, is taking place, and someone

20   needs to look at whether or not the obligation has been         11:01:09

21   discharged and whether or not the foreclosure through the deed

22   of trust process is proper, and it's our position that it is

23   not.

24           And we can talk about and boil down and look at all

25   of the issues that the plaintiffs -- excuse me -- the           11:01:29

1    defendants are raising, but essentially what they're

2    effectively saying is there is no standing.  We believe there

3    is standing because there's an actionable injury.  The injury

4    is a wrongful foreclosure in any way you want to characterize

5    it.                                                              11:01:52

6             They're saying there's been preemption.  There hasn't

7    been preemption because the mere fact of TILA, RESPA, and

8    others being part and parcel of it the loan process is really

9    the icing on the cake.  The real part of the lawsuit that is

10   important is whether the note's been paid off, whether it can  11:02:07

11   be foreclosed upon and whether the deed of trust is there.

12            They've gone to great lengths to argue that the

13   conspiracy counts are not adequately pled, and we've gone now

14   through two counts and we believe that if you look at the way

15   the second amended complaint reads in conjunction with the     11:02:31

16   first amended complaint and look at it from the standpoint of

17   how -- what the requirements are, that we've met that, that

18   we've shown that there is an injury, we've shown that there is

19   a conspiracy, we've shown that there has been a fraud in the

20   inducement in terms of the loan itself, we've shown that       11:02:55

21   ultimately the foreclosures are wrong, and we've shown or

22   alleged that the notes have been paid off.

23            The damages suffered by the plaintiffs due to the

24   defendants' conspiracy to commit fraud are alleged in

25   plaintiffs' paragraphs 170 and 171.  Paragraph 169 alleges     11:03:19

1  that the MERS conspirators' actions in creating the MERS

2  system included the creation of a system to unlawfully deprive

3  plaintiffs of their interest in their residences.

4      The complaint alleges at paragraph 167 that MERS had

5  agreed with all of its members that MERS would never own or          11:03:41

6  acquire any actual beneficial interest in the loan in which it

7  was named as beneficiary under the deed of trust.

8      Again, we have alleged that MERS is not a true

9  beneficiary and therefore the MERS deed of trusts are void.

10      The National City argument is essentially a motion          11:04:09

11  for summary judgment.  They're alleging a number of items

12  outside the pleadings with respect to their acquiring,

13  merging, things of that nature.  Again, maybe we don't survive

14  a motion for summary judgment but we're dealing here with a

15  motion to dismiss.                                               11:04:33

16      Your Honor, in conclusion, the defendants have gone

17  to great lengths to talk about the standard, the *Twombly*

18  standard and the *Iqbal* standard, but even with all the crazy

19  facts in *Iqbal*, that case, as the case demonstrates, is now

20  being sent back for a motion to -- well, through the amendment    11:05:12

21  process.

22      So even when you're trying to sue a former director

23  of national security under the guise that he has somehow

24  conspired against you, the courts have held in that case that

25  you get a right to try it again.                                 11:05:33

1           In this case, we believe that our second amended

2      complaint does meet the tests under *Twombly* and *Iqbal* to state

3      a cause of action against each of the defendants that have

4      been here before the Court.  However, as I indicated when I

5      first got up here under the motion to amend, we still believe          11:05:57

6      it can be done better.

7           There's been a number of issues that have arisen, as

8      you can imagine, in several of these cases that have

9      demonstrated really where the cause of actions lie, what the

10     cause of actions are, and they're certainly not federal in          11:06:18

11     nature in terms of the RESPA and TILA acts.

12          Again, we allege those things.  We believe that, at

13     least with respect to these three clients, those activities

14     demonstrate the need to bring those claims.  But the bottom

15     line on our claim is that our clients have been damaged as a          11:06:41

16     result of the MERS system that all of the defendants

17     participated in and created, and that's the basis of our

18     lawsuit.

19          Thank you.

20          THE COURT:  Thank you, Mr. Nebeker.          11:06:54

21          All right.  Reply?

22          MR. HEFFERON:  Your Honor, Thomas Hefferon again for

23     the originator defendants.  I'll be brief.

24          I'm not quite sure whether there's an intention to

25     abandon the claims against my clients or not.  It was three          11:07:19

1    times those claims were called icing on the cake.  Another

2    time it was said that the claims are not federal in nature.

3    And I think it's pretty clear from the argument as well as

4    from the papers that those federal claims, TILA, RESPA, Fair

5    Housing Act, they're insubstantial and they ought to be          11:07:38

6    dismissed.

7            The claim that's attempting to be asserted at this

8    point is a claim that I think was described when we first

9    started:  The MERS system creates a gap where the deed of

10   trust becomes void.  There's no true beneficiary under the       11:07:54

11   deed of trust.  The obligations are, in fact, discharged and

12   the clients are not aware of who owns the note.

13           Whatever the merits of those, and we think they have

14   no merit, those are not in the complaint.  The complaint is a

15   number of claims at the beginning against my clients and then    11:08:13

16   an assertion that my clients, with MERS and then with everyone

17   else, conspired to hide predatory lending.

18           That's not what the case is apparently about anymore

19   and so the Court ought to throw the case out.

20           Thank you, Your Honor.                                   11:08:30

21           THE COURT:  Thank you.

22           MR. BROCHIN:  Your Honor, again, Bobby Brochin,

23   counsel for MERS.

24           We keep hearing that the essence or the linchpin or

25   the focal point of this litigation is that deeds of trust,       11:08:57

1  millions, by the way, deeds of trust, with MERS designated as

2  the beneficiary are void, that everything springs from this

3  declaration that these documents, which are just contracts

4  entered into with millions of borrowers, are void ab initio.

5      How can you spring and state a claim and cause of                    11:09:21

6  action for deeds that are void when the very pleading that you

7  have doesn't even mention that they are void, does not allege

8  that they are void, does not seek relief, such as rescission

9  or reformation, based on their void.  They cannot be.  That's

10  why this complaint is so fatally deficient.                             11:09:45

11      On one hand, they want to make allegations of a

12  conspiracy and damages from fraud so they can go forward

13  seeking relief, and then they want to tell the Court that the

14  basis of it has nothing to do with what is alleged in the

15  complaint.  And I think Mr. Nebeker hit on the reasons why,            11:10:05

16  and there could be many reasons.  Why aren't you bringing

17  forth that these deeds of trust are void?

18      Perhaps because this is a class action and plaintiffs

19  know full well that if they start talking about contracts

20  being void because of reformation or because they need to be          11:10:23

21  rescinded or because of mutual mistake, those are going to be

22  individual claims that can't be subject to a class action and

23  those claims ought to be dealt with individually by the

24  parties that have been injured, not parties who these

25  plaintiffs think have been injured.                                    11:10:42

1        Mind you, they are seeking certification of a class

2   across the nation that involves millions and millions of deeds

3   of trust.

4        To make it worse, the allegations in the complaint

5   suggest that MERS was the true beneficiary and the                    11:10:59

6   beneficiaries of these deeds and these deeds are no way void.

7        So what they've actually pled compared to what they

8   say are at opposite ends, and I ask the Court, if you look at

9   Arizona law as to what a beneficiary is, if you look at the

10  deed of trust for this particular plaintiff, Miss Cervantes,         11:11:22

11  and you look what's stated in that deed of trust, the

12  conclusion will be this seems to be a true and legal

13  beneficiary under at least Arizona's laws.

14       So how could it be said that they've now turned

15  around and stated a claim that all these deeds of trust,            11:11:39

16  including these three by the named plaintiffs, are somehow

17  void?  It can't be.  There is no distinction between an action

18  for rescission and reformation in that context.  Yes,

19  rescission would rescind completely, reformation would change

20  the terms, but both are based on equitable principles of            11:12:00

21  individual claims when they entered into those contracts.

22       And by the way, the proposed second amended complaint

23  says just that.  It says the defendants actually knew or

24  should have known that the mortgages were unlawfully obtained

25  and subject to rescission, but yet no claims for rescission,        11:12:19

1    no claims for reformation.

2         I suggest because they know not only it wasn't for

3    class certification but it is a remedy that neither their

4    plaintiffs want or would highlight the fact that the

5    plaintiffs didn't suffer any injury because of the fact that        11:12:35

6    MERS was the true beneficiary or not.

7         Remember, MERS is a beneficiary simply as the

8    beneficial titleholder.  It holds that beneficial title for

9    whoever has the interest in the note.  And as that note is

10   sold, which they are done and not required to be recorded,         11:12:52

11   MERS continues to hold the beneficial title as those notes are

12   sold.  It is not taking an interest in the loan.  MERS doesn't

13   purport to take an interest in the loan.  All MERS does, in

14   somewhat like the trustee, it simply serves to hold that

15   beneficial title for the benefit and for the nominee of the        11:13:11

16   lender or whoever that note is assigned to by the lender.

17        I would also just also comment on this notion about

18   wrongful foreclosures and that the idea is to stop the

19   wrongful foreclosures.

20        With all due respect, it is not for this Court to             11:13:31

21   try to reach out, I don't know, 30, 40, 50 states where

22   foreclosures are going on every day and try to monitor those

23   foreclosures.  That's being done now by state courts and

24   judges around the country looking at those particular

25   foreclosures.  There is nothing in common here that would give     11:13:51

1   this Court the authority to actually sit back and monitor all

2   these foreclosures across the country.

3         And I think as the Court appropriately and

4   insightfully pointed out, there is no wrongful foreclosure

5   action alleged, not in the first complaint, not in the second         11:14:09

6   complaint, not in the proposed complaint, not in the

7   complaints in Nevada, not in the complaints in California.

8   They don't allege it because they know that it can't be done

9   where a federal court is going to sit and monitor these,

10  quote-unquote, wrongful foreclosures.         11:14:25

11        I would respectfully suggest that this complaint --

12  and I listened very carefully to Mr. Nebeker to hear where in

13  the complaint there were allegations of fact, allegations of

14  fact, as to how the MERS system hid the owner of the note, how

15  it was that this MERS system was used as a vehicle for some         11:14:45

16  predatory lending because it hid the note.  He didn't give you

17  one paragraph of fact in this complaint, one paragraph of fact

18  in any complaint proposed, simply because he knows the MERS

19  system has nothing to do with the tracking of the note but has

20  everything to do with the tracking of deeds of trust or         11:15:09

21  mortgages.

22        I respectfully ask that the first amended complaint be

23  dismissed and dismissed with prejudice.

24        Thank you.

25        THE COURT:  Thank you.         11:15:19

1        MR. LANDMAN:  Your Honor, very briefly.  Mark

2   Landman on behalf of Freddie Mac and Fannie Mae and the other

3   shareholders.

4        Your Honor, following up on what Mr. Brochin said,

5   not only has the plaintiff not put any of those facts into the        11:15:48

6   amended complaint, proposed amended complaint, the newly

7   talked about amended complaint, but there was not one fact in

8   the argument that was just presented to Your Honor that would

9   tie any of these defendants, whether the shareholders or any of

10  these defendants, to fraud.        11:16:09

11       He now concedes that they're not trying to pierce the

12  corporate veil.  We win.

13       But what he says is, well, the shareholders, you can

14  reach them if they created a corporation for a fraudulent

15  purpose, but when he stood up and argued the motion to amend        11:16:25

16  the complaint he said, really, Your Honor, what the basis for

17  the complaint is, that MERS was created to avoid recording and

18  to securitize loans.

19       Well, both of those are illegal.  Congress, in fact,

20  authorized originally Fannie Mae to securitize loans.        11:16:46

21  Paragraph 155 of the amended complaint that we're moving

22  against says that it is permissible to package loans.

23       The case in the amended complaint that we're moving

24  against is all about, quote, predatory lending.  We pointed

25  that out in our argument.  They haven't come back and said no,        11:17:11

```
 1    no, no, that's not our case.  That's the illegal means.  But

 2    they've ignored the holdings of, for example, Coastal Abstract

 3    against First American Title and Dawson versus Withycombe,

 4    both of which are cited on the -- Withycombe is

 5    W-I-T-H-Y-C-O-M-B-E -- on the table of authorities, that you       11:17:32

 6    need to show actual participation by the shareholders, the

 7    directors, the creators, the members, whatever you're going to

 8    call them.  They haven't alleged that.  There's still a wish

 9    and a prayer that they'll come up with it but that's not

10    allowed under Rule 8 let alone Rule 9(b).  We did not           11:17:51

11    originate loans and the plaintiffs have not alleged otherwise.

12          Your Honor, in a case about seven weeks ago from this

13    court, Hillis versus Heineman, H-I-L-L-I-S versus

14    H-E-I-N-E-M-A-N, 2009 Westlaw 2222709, Judge Campbell stated

15    that a conspiracy claim requires an agreement between two or     11:18:19

16    more persons to accomplish an unlawful purpose or a lawful

17    purpose by unlawful means.  Well settled law in Arizona.

18          They have not alleged that against the shareholders.

19    There's nothing wrong with securitizing loans.

20          All the plaintiffs' fraud claims are premised upon        11:18:41

21    acts that allegedly occurred during origination, but what

22    counsel has now said up to you is that my client and all these

23    other shareholders should now be created, I guess, like

24    groundhogs popping up from holes and they can just pound us if

25    they ever come up with something.  That's not what Iqbal        11:19:01
```

1    allows.

2           This proposed amended pleading, Your Honor, again,

3    alleges lawful actions and just describes them as unlawful.

4    The same shareholder defendants are now referred to as creator

5    defendants, and they attempt to particularize their fraud          11:19:25

6    claims but actually when you read it it makes them even less

7    comprehensible about what they're alleging.

8           For example, they allege that lenders lend,

9    originators originate and securitizers securitize in paragraph

10   173 of the proposed amended pleading.  Well, none of that is       11:19:45

11   illegal.  There simply is no evidence tying the shareholders

12   to any fraudulent conduct and we haven't heard any even in

13   response to our motion.

14          Now they're asking for, frankly, about a tenth chance

15   again to amend.  This is the fourth in this case.  There's         11:20:08

16   been, as noted, three in Nevada with multiple complaints in

17   those cases, one in Tucson, and one in the Central District of

18   California that was just amended.

19          And, by the way, Your Honor, none of those allege this

20   newest theory that we just heard about today that the              11:20:24

21   securitization of the loans and avoiding recording is really

22   the fraud.

23          This case is not plausible.  It's never going to be

24   plausible.  We were not originators.  And there is not one

25   case, Your Honor, that they have cited in all the briefs that      11:20:41

1  have been filed, in all the argument, there's not one case in

2  the country that has found that the putting of MERS on a deed

3  of -- as the beneficiary on a deed of trust is fraudulent.

4  Not one case -- even though MERS has been around since 1993,

5  and if you go on LEXIS and punch in MERS you see a heck of a          11:21:03

6  lot of cases.  Not one case has been brought to this Court to

7  suggest that it was fraud to create MERS, but we, as the

8  shareholders, are alleged to have known that it was fraudulent

9  back in 1993.

10          As the Arizona Supreme Court said in *In re Krohn*,          11:21:22

11  lenders are primarily and vitally concerned with getting their

12  money back with agreed upon interest payments.  Health of the

13  industry depends on repayment, not foreclosure.

14          What's never been said in this case, Your Honor, the

15  reason these plaintiffs are in this situation they are, and         11:21:43

16  it's not with our clients, they didn't pay their contractual

17  obligations.  What the plaintiffs are trying to do is rewrite

18  the rules and throw the widest net possible they can to

19  include people like my clients as shareholders with absolutely

20  no facts, and that, Your Honor, needs to be brought to an end.      11:22:00

21          Thank you.

22          THE COURT:  Thank you.

23          MR. REICHNER:  Good morning again, Your Honor.  Henry

24  Reichner for GMAC.

25          I know I'm in the District of Arizona.  I feel like          11:22:15

1   Alice in Wonderland.  I'm not sure.  I guess the real claim

2   now is whether anyone can foreclose and whether all these

3   deeds are void ab initio.  That seems to be the new theory.

4        Nothing that you heard today changes the result as to

5   GMAC and other members of MERS, such as GE Money.  There's no          11:22:35

6   claim now, nor can there be.  Leave should not be granted to

7   continue this.

8        They made two arguments in response to GMAC's

9   argument.  The first one:  All foreclosures need to be stopped

10  and that's why we have standing.  Well, that's nice but the            11:22:55

11  Supreme Court and Ninth Circuit say otherwise.  And that's the

12  *Warth v. Seldin* case and *Easter v. America West Financial*

13  we've cited.  They don't have standing.

14       That's number one.

15       There's second argument is this:  Conspiracy has been            11:23:12

16  established by participating in the foreclosures.

17       I guess that means that everyone knew that these

18  deeds of trust were void ab initio.  Unfortunately, apparently

19  no one told many of the other courts that have considered this

20  issue and have found that these things are enforceable.                11:23:30

21       This case, as counsel said, is not plausible and it's

22  not going to get plausible as to GMAC as a member or whether

23  GMAC is considered somehow as a shareholder through some

24  piercing theory.  The complaint should be dismissed.  Leave to

25  amend should not be granted as to GMAC.                                11:23:54

1        Thank you very much for your time.

2        THE COURT:  Thank you.

3        MR. PITTINSKY:  Still good morning, Your Honor.  I'm

4   still David Pittinsky and I still represent National City

5   Bank, National City Mortgage, National City Corporation, and          11:24:12

6   PNC.

7        Now, first of all, Your Honor, the *Rivera* case which I

8   handed up is on all fours with this case.  It's not

9   distinguishable.

10       Your Honor will see when you read it completely that,          11:24:26

11   in fact, a foreclosure proceeding had been initiated in that

12   case.

13       Your Honor will see when you read the case that they

14   brought claims, purely state claims not based on federal law,

15   for fraud, breach of contract, unfair business practice and          11:24:42

16   conspiracy.

17       And Your Honor will see that in that case they sought

18   an injunction and including, sought an injunction including a

19   court order declaring the loan transaction void, the very

20   thing the plaintiffs now say they want this Court to do.          11:24:59

21       And notwithstanding all of those facts, the court

22   found that federal preemption governed, and they found that

23   because there, as here, they were challenging the terms of the

24   transaction.

25       And they keep saying this is all about wrongful          11:25:16

foreclosure but they keep injecting the predatory loan point

and they keep injecting, as Mr. Nebeker just said, that what

they're complaining about is that these plaintiffs were given

loans they could not qualify for.  That's what he said.

And, Your Honor, it's clear from the OCC regs that          11:25:34

they cover all of the terms of credit, they cover the

processing of the loan, they cover even the resale of the

loan, they cover the terms and the interest rates of the loan,

they cover all this.

And, by the way, there's no such thing as a cause of         11:25:52

action for wrongful foreclosure.  You can seek to enjoin a

foreclosure if you have a cause of action for doing so but you

have to have a cause of action.  There's no cause of action

wrongful foreclosure.  You have to have an underlying cause of

action and seek to enjoin the foreclosure.  And that's what    11:26:09

they're doing here and they've raised all these claims.

Now, the *Silvas* case, Your Honor, the *Silvas* case was

decide on two bases, each of which provided a basis for

federal preemption.  The first was basing your state claims on

federal violations of lending laws.                            11:26:27

Here, they've done that.  If they want -- as

Mr. Hefferon said, if they want to dismiss all the federal

claims now, they won't be basing their state claims on federal

violations.

But even if they did that, they still have the second        11:26:40

1   basis of *Silvas* to contend with, which is even if you don't

2   base your state claims on federal violations, where you have,

3   as here, the same claims about predatory lending and the terms

4   of the loans and the servicing of the loans and the resale of

5   loans, and that's clearly covered by the OCC regs which we lay          11:27:00

6   out and quote in page 4 of our reply brief, document 180,

7   that's the end of the story.  You have federal preemption.

8           Finally, our motion for standing to sue and the

9   motion to have National City Corporation and PNC dismissed is

10  not a summary judgment motion.  They themselves pleaded both           11:27:23

11  in their first amended complaint and in their proposed second

12  amended complaint that PNC was a successor to National City

13  Corporation, and they themselves did not define even in their

14  second amended complaint either National City Corporation or

15  PNC as a securitizer, a lender or a servicer.                          11:27:42

16          So we request that Your Honor grant both motions and

17  dismiss with prejudice.

18          Thank you.

19          THE COURT:  Thank you.

20          Mr. Thomason?                                                  11:27:53

21          MR. THOMASON:  Tim Thomason, Your Honor, for

22  Tiffany & Bosco.

23          There were two ostensible reasons why Tiffany & Bosco

24  was named in this case.  I would submit, Your Honor, that a

25  reading of the statute belies the appropriateness of                   11:28:04

1  naming Tiffany & Bosco.  The first reason was twofold.  One

2  property had been foreclosed and others were in the process of

3  being foreclosed and therefore it was, quote, necessary to sue

4  the trustee.

5          That's just wrong.  In fact, it couldn't more wrong.  11:28:21

6  It's not necessary to sue the trustee, Judge.  It is basic

7  practice in this state when you are trying to enjoin a trustee

8  sale you only name the beneficiary.  The trustee is bound by

9  the outcome.  The trustee takes its direction from the

10 beneficiary.  The statute says that any order of the Court      11:28:39

11 entered against the beneficiary is binding upon the trustee.

12 The trustee is not only not a necessary party but they are an

13 improper party under that statute.

14          Second, the allegation was made that the deed of

15 trust is void and therefore you need to name the trustee.       11:28:54

16          Assuming for the sake of argument that the deed of

17 trust is void, once again, there is absolutely no reason to

18 name the trustee.  The trustee is bound by the outcome and

19 they are not a proper party.

20          I would submit parenthetically, Your Honor, reading    11:29:10

21 all these papers, hearing all these arguments, I've heard no

22 reason why the deeds of trust were void, but that is beside

23 the point for purposes of this argument.  Tiffany & Bosco is

24 not a proper party.

25          Thank you.                                             11:29:24

1          THE COURT:  All right.  Thank you very much, counsel.

2    Thank you for your efforts in organizing your arguments this

3    morning.  It's ordered taking these matters under advisement,

4    and we're in recess.

5          (Proceedings recessed at 11:29 a.m.)                    11:29:38

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, DAVID C. GERMAN, Official Court Reporter, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the proceedings and testimony reported by me on the date specified herein regarding the afore-captioned matter are contained fully and accurately in the notes taken by me upon said matter; that the same were transcribed by me with the aid of a computer; and that the foregoing is a true and correct transcript of the same, all done to the best of my skill and ability.

DATED at Phoenix, Arizona, this 14th day of September, 2009.

s/David C. German
DAVID C. GERMAN, RMR, CRR