**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| (1) Olga Cervantes, an unmarried woman,) et al., ) | No. CV 09-517-PHX-JAT (Lead) |
| ) | |
| Plaintiffs, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| (1) Countrywide Home Loans, Inc., a New) York corporation, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

Pending before this Court are numerous motions to dismiss by various party Defendants, Plaintiffs Olga Cervantes, Carlos Almendarez, and Arturo Maximo's Motion to Amend First Amended Complaint (Doc. # 189), and Defendants' Motion to Transfer and Consolidate (Doc. # 194). For the reasons that follow, the Court denies Plaintiffs' motion to amend, denies Defendants' motion to consolidate as moot, and grants the various motions to dismiss.[1]

**BACKGROUND**

In September 2006, Plaintiff Cervantes refinanced her residence by executing a promissory note and deed of trust in favor of Defendant Countrywide Home Loans, with

_____

[1] Several Defendants have joined in various motions to dismiss and/or replies in support of motions to dismiss. To the extent the Court need address these joinders, they are granted.

Mortgage Electronic Registration Systems, Inc. ("MERS"), listed as the beneficiary. In December 2006, Plaintiff Almendarez purchased his residence through entering into a promissory note secured by a deed of trust in favor of First Franklin, with MERS listed as the beneficiary. In October 2006, Plaintiff Maximo purchased his residence, funded in part by a promissory note secured by a deed of trust in favor of First Franklin, with MERS listed as the beneficiary.

In February 2009, after Plaintiff Almendarez discontinued making payments on his note, Almendarez's residence was sold at a public auction. In August 2008, Maximo discontinued making payments on his promissory note. A Notice of Trustee's Sale was recorded with the Maricopa County Recorder on December 23, 2008. A public auction was to be held on March 24, 2009, concerning the sale of Maximo's residence. The public auction was rescheduled for April 24, 2009. On April 22, Maximo filed with this Court a Notice of Defendant's Cancellation of Trustee's Sale and Plaintiff's Request for Hearing on Preliminary Injunction (Doc. # 56). In his notice, Maximo related that the public auction scheduled for April 24 had been canceled. In light of this cancellation, this Court denied Maximo's request for a preliminary injunction. (Doc. # 185.)

In March 2009, Plaintiffs collectively brought this present action, alleging violations of the Truth in Lending Act, Real Estate Settlement Procedures Act, Home Ownership and Equity Protection Act, Fair Housing Act, Arizona Consumer Fraud Act. Plaintiffs also seek damages from state law claims of conspiracy to commit fraud and conversion, as well as for intentional infliction of emotional distress. Lastly, Plaintiffs seek injunctive and declaratory relief.

**ANALYSIS**

*Motions to Dismiss*

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 7129, 732 (9th Cir.2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal,* 129 S.Ct. at 1949.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly,* 550 U.S. at 545 (internal quotations, citations and alterations omitted).  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  *Iqbal*, 129 S.Ct. at 1950 (quoting FED. RULE CIV. PROC. 8(a)(2)) (citation omitted).[2]

*Count I*

In their first claim for relief, Plaintiffs allege various violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, including inadequate disclosures, improper charges, and failed notices.  Defendants First Franklin and Countrywide Home Loans move to dismiss Plaintiffs' first cause of action for a failure to state a claim pursuant to Rule 12(b)(6), while Defendant National City Bank ("NCB") moves to dismiss Plaintiff's first cause of action for lack of standing.

The Court will analyze standing first because "[s]tanding is the threshold issue of any federal action, a matter of jurisdiction because 'the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Local Nos. 175*

---

[2]   Although there were various exhibits attached to certain motions to dismiss, responses, or replies, the Court makes clear that it did not consider anything beyond the complaint in deciding the motions to dismiss.

1   *& 505 Pension Trust v. Anchor Cap.*, 498 F.3d 920, 923 (9th Cir. 2007) (quoting *Lujan v.*

2   *Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  In order to establish Article III standing,

3   a plaintiff must demonstrate: "(1) it has suffered an 'injury in fact' that is (a) concrete and

4   particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is

5   fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to

6   speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth,*

7   *Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000).

8        Defendant NCB premises its argument that Plaintiffs lack standing to sue NCB on

9   Plaintiffs not having been personally injured by NCB.  That is, Plaintiffs' do not  allege that

10  they actually received a mortgage loan from NCB.  Rather, Plaintiffs "seek to assign liability

11  to NCB solely because First Franklin was a subsidiary of NCB."  (Doc. # 128 at p. 8.)  In

12  response, Plaintiffs argue that NCB did in fact extend loans to Plaintiffs because Plaintiff

13  Almendarez and Plaintiff Maximo's deeds of trust were executed in favor of "First Franklin,

14  a Division of National City Bank."  The Court concludes that Plaintiffs have failed to carry

15  their burden demonstrating that they have standing to sue NCB under Counts I, II, and IV.

16       Plaintiffs' have failed, both in their complaint and in their response to NCB's motion

17  to dismiss, to demonstrate that NCB participated in the origination of any of Plaintiffs' loans.

18  The only connection between Plaintiffs' loans and NCB is the phrase "First Franklin, a

19  Division of National City Bank" contained in Plaintiffs Almendarez and Maximo's deeds of

20  trust.  Yet, even this phrase makes clear that the deeds of trust are being executed in favor

21  of First Franklin.  At most, this phrase in the deeds of trust demonstrates that First Franklin

22  is a mere corporate relation of NCB.  However, this is not the equivalent of NCB extending

23  a loan to Plaintiffs, or otherwise participating in the loan origination process in violation of

24  TILA.  *See Royal Indus. v. St. Regis Paper Co.* 420 F.2d 449, 453 (9th Cir. 1969) ("The

25  separate identities of a parent and its subsidiary, even a wholly owned subsidiary, will not

26  be disregarded unless a recognition of their separateness, under the circumstances, would

27

28

1   sanction a fraud or promote injustice."). Plaintiffs have failed to demonstrate that their

2   alleged injuries are fairly traceable to NCB.[3]

3         The Court next addresses Defendants First Franklin and Countrywide's motion to

4   dismiss pursuant to Rule 12(b)(6). Defendants argue that Plaintiffs' allegations contained

5   in their first claim of relief are merely generalized allegations containing labels and

6   conclusions and, as such, are insufficient under *Twombly*. The Court disagrees.

7         While certain of Plaintiffs' allegations in Count I do contain formulaic recitation of

8   the elements for TILA violations, Plaintiffs included a sufficient amount of factual

9   allegations to survive a Rule 12(b)(6) motion. For example, Plaintiff Almendarez alleges that

10  he was not provided with a final calculation of the interest rate, finance charges, or the annual

11  percentage rates on the final amount of his mortgage. Moreover, Plaintiffs Almendarez and

12  Maximo allege that they only speak Spanish and that none of the closing documents were

13  translated into Spanish. Plaintiffs also assert that Defendants calculated the annual

14  percentage rate based upon improperly disclosed amounts. Such allegations suffice for the

15  Rule 12(b)(6) stage of the proceedings.

16        However, Defendants also argue that Plaintiffs' allegations in Count I are time-barred

17  under the applicable statute of limitations. In response, Plaintiffs assert that they sufficiently

18  alleged equitable tolling such that the statute of limitations does not preclude their first claim

19  for relief. The Court finds that the statute of limitations applies.

20        A cause of action brought under TILA must be commenced "within one year from the

21  date of the occurrence of the violation." 15 U.S.C. § 1640(e). Each Plaintiff obtained his or

22  her loan in 2006. This present action was commenced in March of 2009. Hence, under

23  section 1640(e), Plaintiffs' TILA claims are barred absent any applicable exclusions.

24        The general rule is that the statute of limitations period commences at the

25  consummation of the transaction. *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).

26

27        [3] Even if the Court concluded that Plaintiffs had standing to sue NCB, for the reasons

28  stated later in this Order, Plaintiffs' claims against NCB would likewise be dismissed.

1    However, "the doctrine of equitable tolling may, in the appropriate circumstances, suspend

2    the limitations period until the borrower discovers or had reasonable opportunity to discover

3    the fraud or nondisclosures that form the basis of the TILA action." *Id.* "Equitable estoppel,

4    also termed fraudulent concealment, halts the statute of limitations when there is active

5    conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim

6    is filed, to prevent the plaintiff from suing in time." *Guerrero v. Gates*, 442 F.3d 697, 706

7    (9th Cir. 2006) (quotations omitted).

8        Here, Plaintiffs allege that Defendants "fraudulently misrepresented and concealed

9    the true facts related to the items subject to disclosure," and Plaintiffs "did not discover the

10   Defendants' failure to make the disclosures pursuant to 15 U.S.C. § 1638 until one year

11   within the filing of this complaint." (Doc. # 5 at p. 25, ¶¶ 96-97.) Such statements are the

12   only allegations pertaining to equitable estoppel in Plaintiffs' complaint. Plaintiffs do not

13   allege any facts supporting these legal conclusions, such as how Defendants fraudulently

14   misrepresented or concealed the true facts, or why Plaintiffs were otherwise precluded from

15   discovering the TILA violations at the consummation of their loans–the general rule for when

16   the statute of limitations commences under section 1638. Such factual underpinnings are all

17   the more important in such a case as the one before the Court since the vast majority of

18   Plaintiffs' alleged violations under TILA are violations that are self-apparent at the

19   consummation of the transaction–*e.g.*, not being provided a notice of one's right to rescind

20   the transaction at the time of closing, not being properly provided with the annual percentage

21   rate, finance charges, total amount financed, payment schedule, etc. Plaintiffs' assertions

22   pertaining to equitable estoppel are pure legal conclusions devoid of any supporting factual

23   allegations. The Court finds that Plaintiffs have failed to adequately allege a claim for

24   equitable tolling such that the one-year statute of limitation contained in 15 U.S.C. § 1638

25   should not apply. Accordingly, the Court applies the general rule under section 1638 and

26   finds that Plaintiffs' claims under TILA are time-barred.

27   ///

28   ///

*Count II*

In their second claim for relief, Plaintiffs allege violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*  Specifically, Plaintiffs allege that: Defendants failed to provide a uniform settlement statement and a special information booklet, including a good faith estimate of the amount of charges for settlement services; Defendants were required to inform Plaintiffs at the time of application for their loans whether the servicing of the loans could be sold or transferred and, if the loans were sold or transferred, Plaintiffs are entitled to 15 days notice before the sale or transfer; Defendants were prohibited from paying any fee, kickback, or thing of value as a part of the real estate settlement service involving the loans; Defendants were required to disclose any controlled business arrangements; and Defendants charged Plaintiffs with unreasonably high fees and charges for settlement services.  The Court finds that Plaintiffs have not stated a viable claim for relief under count two.

Plaintiffs' claims that Defendants violated RESPA by failing to provide a uniform settlement statement, a special information booklet, and a good faith estimate of the amount of charges for settlement services fail because there is no private cause of action for such alleged violations of RESPA. *Bloom v. Martin,* 865 F.Supp. 1377, 1383-85 (N.D.Cal.1994); *Walker v. Artisan Mortgage, LLC,* 2008 WL 2026365, * 3 (D. Ariz. 2008).

Plaintiffs' next claim that Defendants were required to inform them whether the servicing of the loans could be sold or transferred, and if the loans were to be sold or transferred, Plaintiffs are entitled to 15 days notice before the sale or transfer, likewise fails. Under section 2605, which is the rubric of RESPA that Plaintiffs' allegations fall under, a plaintiff must allege actual damages resulting from a violation of section 2605.  12 U.S.C. § 2605(f)(1)(A) ("Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: . . . In the case of any action by an individual, an amount equal to the sum of-- (A) any actual damages to the borrower as a result of the failure."); *Collier v. Wells Fargo Home Mortg.*, 2006 WL 1464170, *3 (N.D.Tex. 2006); *Hepler v. Washington Mut. Bank, F.A.*, 2009 WL 1045470, *4-5 (C.D.Cal.

1    2009).  Plaintiffs have failed to allege any such damages. As such, their claims under section

2    2605 fail.

3        Plaintiffs' next allegation under Count II states that "Pursuant to 12 U.S.C. § 2607(a),

4    Defendants were prohibited from paying any 'fee, kickback, or thing of value' to any person

5    as part of the real estate settlement service involving the loans described herein."  (Doc. # 5

6    at p. 28, ¶ 109.)  Plaintiffs' allegation falls short of the Rule 12(b)(6) standard propounded

7    by *Twombly* and *Iqbal*.   Plaintiffs merely state that Defendants were prohibited from

8    violating section 2607(a). Plaintiffs do not actually allege that Defendants violated section

9    2607(a) and, more importantly, Plaintiffs do not provide any facts supporting such an

10   assertion.  At most, Plaintiffs have provided a legal conclusion pertaining to 12 U.S.C. §

11   2607(a) and, as such, Plaintiffs' claim fails under a  Rule 12(b)(6) motion.

12       Similarly, Plaintiffs' claim that Defendants were required to disclose any "controlled

13   business arrangements" fails under *Twombly* and *Iqbal*.  (Doc. # 5 at p. 28, ¶ 110.)  Plaintiffs

14   allege only a one-sentence legal conclusion, providing no facts in support of their allegation.

15   Moreover,  the  Court  is  unable  to  discover  where  the  phrase  "controlled  business

16   arrangements" is found in 12 U.S.C. §§ 2601 *et seq.*  RESPA contains the phrase "affiliated

17   business arrangement," yet Plaintiffs fail to allege to whom Defendants directly or indirectly

18   improperly referred business.  Nor do Plaintiffs allege that they were required to use such a

19   provider within the context of section 2607.  Accordingly, Plaintiffs' claim fails.

20       Lastly under RESPA, Plaintiffs allege that Defendants charged unreasonably high fees

21   and charges for settlement services.  As several courts have recognized, however, RESPA

22   was not intended to serve as a price cap for settlement services, and the text of RESPA does

23   not support such an allegation.  *Maganallez v. Hilltop Lending Corp.*, 505 F.Supp.2d 594,

24   604, (N.D.Cal. 2007) (dismissing similar claim and collecting cases).

25       Therefore, the Court finds that Plaintiffs have failed to allege a claim under RESPA

26   for which relief may be granted and, as such, the Court dismisses Plaintiffs' claims under

27   Count II.

28   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Count III*

In her third claim for relief, Plaintiff Cervantes alleges a violation of the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1602(aa), 1610, and 1639. However, in Plaintiffs' motion to amend their first amended complaint, Plaintiff Cervantes seeks to withdraw her HOEPA claim.  (Doc. # 189 at pp. 1-2.)  Thus, the Court need not address Plaintiff Cervantes' claims under HOEPA.

*Count IV*

In Plaintiffs' fourth claim for relief, they allege a violation of the Fair Housing Act ("FHA") 42 U.S.C. §§ 3601, *et seq.*  Specifically, Plaintiffs allege that Defendants offered Plaintiffs "a less-than-favorable loan" based upon Plaintiffs' race and that Defendants targeted Plaintiffs for predatory lending because of Plaintiffs race. (Doc. # 5 at p. 34, ¶¶ 133-34.)  In response, Defendants argue that Plaintiffs fail to state a cognizable claim for relief. The Court agrees with Defendants.

In the discrimination context, a plaintiff must do more than simply allege a generalize discrimination.  *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005) (stating in the employment discrimination context that "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is  responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities") (quotations omitted).  Here, Plaintiffs allege nothing more than Defendants "purposefully targeted" Plaintiffs because of their race and Plaintiffs received "a less-than-favorable loan than would have been offered to a white borrower."  (Doc. # 5 at p. 34, ¶¶ 133-34.)  Such allegations, again, are mere legal conclusions.  Plaintiffs do not allege any facts supporting such allegations–*e.g.*, Plaintiffs were qualified for a better loan based upon objective indicators such as income and credit ratings, Defendants offered similarly situated borrowers outside of Plaintiffs' racial class more beneficial loan options, etc.  Thus, the Court finds that Plaintiffs have failed to state a plausible claim for relief under FHA.

1    In any event, Plaintiffs' claims under Count IV are time-barred.  Discrimination

2    claims under FHA have a two-year statute of limitations time period.  42 U.S.C. § 3613

3    (a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United

4    States district court or State court not later than 2 years after the occurrence or the

5    termination of an alleged discriminatory housing practice.").  As described in the discussion

6    under Count I, Plaintiffs obtained their loans in 2006 and brought this present action in

7    March 2009.  As such, Plaintiffs' claims fall outside the two-year time limitation.

8    Nevertheless, Plaintiffs allege a continuing violation theory.

9    Under the continuing violation theory, when "a plaintiff, pursuant to the Fair Housing

10   Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice

11   that continues into the limitations period, the complaint is timely when it is filed within . .

12   . the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S.

13   363, 380-81 (1982).  However, "[a] continuing violation is occasioned by continual unlawful

14   acts, not by continual ill effects from an original violation." *Ward v. Caulk*, 650 F.2d 1144,

15   1147 (9th Cir.1981).  The Court finds that Defendants' issuing of the loans in question were

16   one-time acts.  Even if the Court assumed that Defendants' actions violated the FHA, the

17   discriminatory act took place at the time Defendants extended the loan to Plaintiffs.

18   Therefore, because Plaintiffs filed their action under FHA more than two-years after the

19   alleged discriminatory acts, Plaintiffs' FHA claims are time-barred.[4]

20                                    *Count V*

21   In their fifth claim for relief, Plaintiffs argue that Defendants violated the Arizona

22   Consumer Fraud Act ("ACFA"), Arizona Revised Statutes ("A.R.S.") section 44-1522, *et*

23   *seq.*, by using "deception, false promises, and misrepresentation regarding the terms of the

24

25   _____

26   [4] Plaintiffs' allegation that "Defendants have engaged in a pattern or extended practice of exploiting the market of Hispanics in the market area where Plaintiffs reside" (Doc. # 5 at p. 35, ¶ 137) is a mere legal conclusion unsupported by any factual allegations and, as such, is not a plausible claim for a continuing violation under the standards enunciated by *Twombly* or *Iqbal*.

27

28

loan offered to" Plaintiffs.  Defendants argue that Plaintiffs' claims under Count V are time-barred and, in any event, they fail to state a claim under Rule 12(b)(6).  The Court need not reach Defendants' latter argument, as the Court finds that Plaintiffs' claims under Count V are barred by the applicable statute of limitations.

Actions commenced pursuant to A.R.S. § 44-1522 must be brought within one year.  A.R.S. § 12-541(5) (2003) ("There shall be commenced and prosecuted within one year after the cause of action accrues, and not afterward, the following actions: . . . Upon a liability created by statute, other than a penalty or forfeiture.").  An action accrues under ACFA "when the defrauded party discovers or with reasonable diligence could have discovered the fraud." *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1379 (Ariz. Ct. App. 1994) (quoting *Mister Donut of Am., Inc. v. Harris,* 723 P.2d 670, 672 (1986)).  Put another way, a cause of action under ACFA "accrues when 'the plaintiff knows or should have known of both the *what* and *who* elements of causation.'" *Alaface*, 892 P.2d at 1379 (quoting *Lawhon v. L.B.J. Institutional Supply, Inc.,*765 P.2d 1003, 1007 (App.1988)).

Here, as described in the discussion under Count I, Plaintiffs obtained their loans in 2006 and brought this present action in March 2009.  The *who* of Plaintiffs' cause of action under ACFA was known at the time Plaintiffs obtained their loans, as Plaintiffs' make no allegations to the contrary and the named Defendants under Count V are the very Defendants Plaintiffs allege are responsible for the origination of their loans.  Plaintiffs allege, however, that they "learned of Defendants' violation of A.R.S. § 44-1522 within one year of the filing of this complaint."  (Doc. # 5 at p. 37, ¶ 145.)  Thus, Plaintiffs allege that their cause of action accrued within one year of the filing of their complaint because they did not know the *what* element of their ACFA claim.  However, the test for when a cause of action accrues is not only what the plaintiff actually knew, but what he or she *should have known or could have discovered* with reasonable diligence.  *Alaface*, 892 P.2d at 1379.

Plaintiffs allegations under ACFA, even when assumed to be true, are all related to facts that were discoverable at the time Plaintiffs entered into their loan transactions.  The allegations revolve around the very terms of the loans, such as interest rate, payments to be

1    made under the loan, and Plaintiffs' ability to refinance.  Plaintiffs do not allege that the

2    terms Defendants seek to enforce are different or somehow an alteration from the promissory

3    notes Plaintiffs signed.  Rather, Plaintiffs' allegations amount to a claim that the terms

4    contained in the promissory notes are material deviations from the terms Plaintiffs were

5    promised before entering into the loan transactions.  Even assuming there are material

6    deviations to support a claim under ACFA, the *"what* element of causation" was apparent

7    at the time Plaintiffs entered into the loan transactions–Plaintiffs could have discovered the

8    deviations in the documents they were signing.  Accordingly, Plaintiffs' ACFA cause of

9    action accrued upon entering their loan transactions and are therefore precluded under

10   A.R.S. § 12-541(5).

11                                        *Count VI*

12         In their sixth claim for relief, Plaintiffs allege that Defendants Countrywide, NCB,

13   First Franklin, and Mortgage Electronic Registration Systems, Inc. ("MERS") conspired to

14   commit both fraud and conversion.  Defendants respond that Plaintiffs have failed to state

15   a claim for civil conspiracy.

16         In Arizona, there is no independent tort of conspiracy.  *Hansen v. Stoll*, 636 P.2d

17   1236, 1242 (Ariz. Ct. App. 1981).  "A civil conspiracy requires an underlying tort which the

18   alleged conspirators agreed to commit."  *Baker ex rel. Hall Brake Supply, Inc. v. Stewart*

19   *Title & Trust of Phoenix, Inc.*, 5 P.3d 249, 259 (Ariz. Ct. App. 2000).  In this case, Plaintiffs

20   allege underlying torts of fraud and conversion.

21         "Arizona has adopted the following definition of conversion . . . 'Conversion is an

22   intentional exercise of dominion or control over a *chattel* which so seriously interferes with

23   the right of another to control it that the actor may justly be required to pay the other the full

24   value of the *chattel*.'"  *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) (quoting

25   RESTATEMENT (SECOND) OF TORTS § 222A(1) (1965)) (emphasis added).  "'An action for

26   conversion ordinarily lies only for personal property that is tangible, or to intangible property

27   that is merged in, or identified with, some document.'"  *Miller*, 104 P.3d at 203 (quoting 18

28   Am.Jur.2d, Conversion § 7 (2004)).  Plaintiffs allegations amount to conversion not of chattel

1    or personal property, but real property.[5]   However, there is no tort of conversion of real

2    property in Arizona.  *See Strawberry Water Co. v. Paulsen*, 207 P.3d 654, 659 (Ariz. Ct.

3    App. 2008) (distinguishing different types of water types and stating that "[w]ater rights are

4    real property interests, and thus cannot be converted because they are not chattels.")

5    (citations omitted).  Moreover, even if Plaintiffs' claims do involve "chattel," Plaintiffs have

6    failed to allege how Defendants exercised dominion or control in such a manner that

7    Plaintiffs did not have the right to control the chattel.  Accordingly, the Court finds that

8    Plaintiffs' claim for conspiracy based upon conversion fails to state a claim upon which relief

9    may be granted.

10          Regardless of the merits of Plaintiffs' underlying claims for fraud and conversion,

11   Plaintiffs' claim that Defendants conspired to commit fraud and conversion is insufficient

12   both for a failure to plead conspiracy with the requisite particularity and for a failure to plead

13   an agreement to participate in the fraud and conversion.  "In alleging fraud or mistake, a

14   party must state with particularity the circumstances constituting fraud or mistake."  FED. R.

15   CIV. P. 9(b).  Plaintiffs allegations with respect to fraud were not made with particularity.

16   Rather, Plaintiffs' allegations amount to mere conclusory statements and general averments

17   of fraud.

18          Plaintiffs allege that Defendants: formed an association to conspire in order to deprive

19   Plaintiffs of their property; knew Plaintiffs would be unable to pay the loans and, thus,

20   Defendants would be in a position to seize Plaintiffs' real property through foreclosure; and

21   targeted Plaintiffs for the purpose of misrepresenting the terms of the loans in order to seize

22   ───────────────────

23          [5]  Plaintiffs argue in their response to Defendants' motion to dismiss that they have
24   "stated a claim for conversion in that Plaintiffs had a right to be free from illegal
     foreclosures, and a right to the full disclosures mandated by federal law."  (Doc. # 156 at p.
25   14.)  However, Plaintiffs fail to cite any Arizona cases recognizing an action for conversion
     based upon an illegal foreclosure or for incomplete disclosures.  Moreover, the Court fails
26   to see how the right to be free from an illegal foreclosure (or an incomplete disclosure) is not
     related and integral to Plaintiffs' real property rights in the said properties.  Stated another
27   way, the Court does not believe that Plaintiffs' right to be free from an illegal foreclosure can
28   properly be divorced from Plaintiffs' real property rights.

1    Plaintiffs' properties.  Plaintiffs also repeat their allegations that Defendants violated TILA,

2    RESPA, HOEPA, ACFA, and the Fair Housing Act.  Plaintiffs do not allege that Defendants

3    entered into an express agreement to commit fraud and conversion.  Rather, Plaintiffs allege

4    that Defendants "formed an association to conspire."  (Doc. # 5 at p. 38 at ¶ 148.)  "[A]

5    plaintiff must allege with sufficient factual particularity that defendants reached some explicit

6    or tacit understanding or agreement.  It is not enough to show that defendants might have had

7    a common goal unless there is a factually specific allegation that they directed themselves

8    towards this wrongful goal by virtue of a mutual understanding or agreement." *S. Union Co.*

9    *v. Sw. Gas Corp.*, 165 F.Supp.2d 1010, 1020-21 (D. Ariz. 2001) (quoting Alfus v. Pyramid

10   Technology Corp., 745 F.Supp. 1511, 1521 (N.D. Cal. 1990)).  Plaintiffs have not stated how

11   or even when the alleged conspiracy was formed.  Plaintiffs have also not included any

12   factual allegations pertaining to how Defendants targeted Plaintiffs.  Plaintiffs' allegations

13   amount to a claim that Defendants somehow formed a conspiracy with the intent to provide

14   Plaintiffs with a loan, the terms of which they could not afford, thus permitting Defendants

15   to gain control of the properties through foreclosure.  "But terms like 'conspiracy,' or even

16   'agreement,' are border-line: they might well be sufficient in conjunction with a more

17   specific allegation–for example, identifying a written agreement or even a basis for inferring

18   a tacit agreement–but a court is not required to accept such terms as a sufficient basis for a

19   complaint. The case law on this point is ample." *DM Research, Inc. v. Coll. of Am.*

20   *Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) (cited with approval in *Twombly*, 550 U.S. at

21   557).  Plaintiffs have failed to provide any specific, factual allegations inferring even a tacit

22   agreement.  As such, Plaintiffs sixth claim for relief falls short of the requirements of Rule

23   9(b), *Twombly*, and *Iqbal*.

24                                          *Count VII*

25          In their seventh claim for relief, Plaintiffs assert that the various named Defendants

26   that are members of the MERS system, conspired to commit fraud through the MERS

27   system.  In response, Defendants filed several motions to dismiss raising similar arguments

28   under Rules 9(b) and 12(b)(6), as well as joining in the motions to dismiss of other named

1  Defendants.  The Court need not reiterate each of the arguments, as Plaintiffs have failed to

2  state a viable claim for relief for conspiracy to commit fraud under Rule 12(b)(6).  At its

3  core, Plaintiffs' claim for conspiracy to commit fraud is an attack on the MERS system.

4  However, because Plaintiffs claim that the MERS system is a fraud fails as a matter of law,

5  Plaintiffs' claim for conspiracy to commit fraud based upon the MERS system likewise must

6  fail.

7      MERS is a wholly owned subsidiary of MERSCORP, a Virginia corporation.  Various

8  of the named Defendant banks and lending institutions are shareholders in MERSCORP and

9  participants in the MERS system. Under the MERS system, at the origination of a residential

10  loan, the lender takes possession of a promissory note and the borrower and lender agree to

11  designate MERS as the beneficiary under a deed of trust.  Under the MERS system, the rights

12  to the mortgage are tracked internally and not recorded in the public records each time the

13  rights to the mortgage are bought and sold, so long as the buyer is a member of the MERS

14  system.  Plaintiffs' complaints from this system are two-fold: (1) MERS is never really a

15  beneficiary under the deed of trust because it never acquires a true beneficial interest; and

16  (2) the MERS system is a means of circumventing the public recording requirements.

17      In support of its first objection, Plaintiffs allege that MERS never owns or acquires

18  any beneficial interest in any of the loans it is named as the beneficiary under a deed of trust.

19  As such, Plaintiffs allege that the MERS system is a "sham" beneficiary.  Plaintiffs, however,

20  have not directed this Court to any Arizona case that finds that the MERS system is

21  fraudulent.  Indeed, Plaintiffs' allegations would foreclose the very splitting of a promissory

22  note from a deed of trust.  Such an approach, of course, would intrude into the realm of third-

23  party beneficiary contracts, as well as assignments and delegations.  More importantly,

24  Plaintiffs have failed to allege what effect, if any, listing the MERS system as a "sham"

25  beneficiary on the deed of trust had upon their obligations as borrowers.  The members of

26  the MERS system were not participants in Plaintiffs' loan origination process, nor do

27  Plaintiffs so allege.  Plaintiffs do not allege that they were somehow induced to enter into

28  their loans on the basis that MERS was a genuine and not a "sham" beneficiary.

1    Moreover, the Court fails to see how the MERS system commits a fraud upon

2    Plaintiffs.   Plaintiffs' argument that MERS is a "sham" beneficiary is unconvincing.

3    Otherwise, any situation where a beneficiary obtains less than the full rights possessed by the

4    entity or person granting the beneficiary status would likewise result in a "sham" beneficiary.

5    The fact that MERS does not obtain such rights as to collect mortgage payments or obtain

6    legal title to the property in the even of non-payment does not transform MERS' status into

7    a "sham."

8    Plaintiffs second objection to the MERS system similarly has no effect upon their

9    status as borrowers.  The original mortgage between the borrower and the lender, which lists

10   MERS as the beneficiary, is recorded in the public land records.  Subsequent sales of the

11   mortgage, so long as they involve MERS members, are not recorded in the public records

12   but, rather, are tracked in the MERS system.  Thus, Plaintiffs really attack the notice, or lack

13   thereof, to future buyers of mortgages in the MERS system.  Any lack of notice in the public

14   records, however, to future buyers of Plaintiffs' mortgages does not alter Plaintiffs'

15   obligations under the mortgages; nor have Plaintiffs alleged that, had they been fully apprised

16   of the MERS system and its use of an in-house records keeping system, Plaintiffs would not

17   have entered into their loans.  Plaintiffs also do not allege that they were somehow induced

18   into entering into their loans based upon a misunderstanding of the MERS system.

19   For these reasons, the Court finds that Plaintiffs' claim for conspiracy to commit fraud

20   fails as a matter of law under Rule 12(b)(6).  In Arizona, a fraud claim requires proof of nine

21   elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge

22   of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the

23   recipient in a manner reasonably contemplated; (6) the hearer's ignorance of the falsity of

24   the representation; (7) the hearer's reliance on the truth of the representation; (8) the right to

25   rely on it; and (9) consequent and proximate injury. *Echols v. Beauty Built Homes, Inc.,* 647

26   P.2d 629, 631 (1982).  The Court finds that elements two, three, seven, and nine are all

27   absent from Plaintiffs' complaint.  For the reasons articulated above, the Court finds that

28   Defendants representations to Plaintiffs that MERS would serve as the beneficiary under the

1  deed of trust was not a false representation and, even if such a representation was false, the

2  Court finds that it was not material.  Furthermore, Plaintiffs have failed to adequately allege

3  that Defendants' representations concerning the MERS system–including serving as the

4  beneficiary under the deeds of trust–induced them to rely upon such representations and, in

5  so doing, Plaintiffs have suffered injuries that resulted from the false representations.  At

6  most, Plaintiffs find the MERS system to be disagreeable and inconvenient to them as

7  consumers.  Such complaints, however, do not arise to the level of fraud, much less a

8  conspiracy to commit fraud.

9                                              *Count VIII*

10           In their eighth claim for relief, Plaintiffs seek damages for Defendants' intentional

11  infliction of emotional distress.  To prove a claim of intentional infliction of emotional

12  distress under Arizona law, Plaintiffs must show that: 1) Defendants engaged in extreme and

13  outrageous conduct; 2) Defendants either intended to cause emotional distress or recklessly

14  disregarded the near certainty that emotional distress would result from the conduct; and 3)

15  Plaintiffs actually suffered emotional distress because of Defendants' conduct.  *Watts v.*

16  *Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz. 1980).  "To establish a claim under

17  this tort, the conduct alleged must be 'atrocious' and 'beyond all possible bounds of decency'

18  so that an average member of the community would regard it as outrageous.  *Lucchesi v.*

19  *Stimmell*, 716 P.2d 1013, 1015 (Ariz. 1986).  "It is for the court to determine, in the first

20  instance, whether the defendant's conduct may reasonably be regarded as so extreme and

21  outrageous as to permit recovery, or whether it is necessarily so."  *Id.* at 1016 (quoting

22  RESTATEMENT (SECOND) OF TORTS § 46 (1965)).

23           Plaintiffs' allegations that Defendants targeted Plaintiffs because of their vulnerability

24  to Defendants' alleged predatory lending practices, even if true, do not arise to the level of

25  "atrocious," and do not go "beyond all possible bounds of decency."  Further, it is not

26  enough that Defendants acted with an intent that is tortious or even criminal.  RESTATEMENT

27  (SECOND) OF TORTS § 46 cmt. d.  Plaintiffs' allegations fail to state a claim for relief under

28  Arizona law for intentional infliction of emotional distress, as the alleged conduct is not the

1   type of conduct that "falls at the very extreme edge of the spectrum of possible conduct."

2   *Watts*, 619 P.2d at 1035.

3                                            *Counts IX & X*

4          In their ninth and tenth claims for relief, Plaintiffs seek injunctive and declaratory

5   relief, respectively.  However, for the various reasons discussed above, the Court has already

6   found that Plaintiffs' claims contained in Counts I-VIII must be dismissed.  Therefore, any

7   request for injunctive and declaratory relief premised upon Counts I-VIII must likewise fail.

8                                          *A.R.S. § 33-807*

9          In addition to the arguments raised by the other Defendants, which are addressed

10   above, Defendant Tiffany & Bosco, P.A. argues that Arizona Revised Statutes section 33-

11   807(E) (2007) precludes the filing of such actions against T&B as trustee.  In response,

12   Plaintiffs argue that T&B were not properly appointed as trustee and T&B failed to act in

13   good faith.  Section 33-807(E) provides:

14          *The trustee need only be joined as a party in legal actions pertaining
            to a breach of the trustee's obligation under this chapter or under the deed of
15          trust.*  Any order of the court entered against the beneficiary is binding upon
            the trustee with respect to any actions that the trustee is authorized to take by
16          the trust deed or by this chapter.  *If the trustee is joined as a party in any other
            action, the trustee is entitled to be immediately dismissed* and to recover costs
17          and reasonable attorney fees from the person joining the trustee.

18   (Emphasis added.)

19          T&B was substituted as trustee on the Almandarez and Maximo deeds of trust.[6]  The

20   Court disagrees that T&B was not properly appointed as trustee.  Plaintiffs do not argue that,

21   procedurally, T&B was improperly added as substitute trustee, nor that, but for being

22   appointed by MERS, T&B is not otherwise permitted under Arizona law to act in the

23   capacity as a trustee. Rather, Plaintiffs' contention is that MERS has no authority to appoint

24   a trustee and, thus, T&B's appointment is a nullity.  However, as discussed above, the Court

25

26

27          [6] T&B argues that only Michael A. Bosco, Jr., was appointed as the substitute trustee
     and not T&B.  However, the Court need not resolve this dispute as the Court finds that T&B
28   was improperly named in this suit under A.R.S. § 33-807(E).

1   rejects Plaintiffs' argument that the MERS system is a fraud and is without authority to act

2   as a beneficiary under a deed of trust.

3        Likewise, the Court rejects Plaintiffs' argument that T&B did not act in good faith.

4   Plaintiffs' argument is merely a corollary of its argument that T&B was not duly appointed.

5   That is, Plaintiffs argue that because T&B was added as trustee by MERS–who has no

6   authority to appoint a trustee–T&B's actions as trustee–including foreclosure actions–were

7   not conducted in good faith since T&B failed to adequately investigate whether they were

8   lawfully appointed as trustee.  However, because the Court rejects Plaintiffs' arguments

9   related to the MERS system, the Court finds that Plaintiffs' complaint fails to state a claim

10   that T&B did not act in good faith.

11        T&B has requested its attorneys' fees and court costs for having to defend against

12   Plaintiffs' action.  Section 33-807(E) provides that "If the trustee is joined as a party in any

13   other action, the trustee *is entitled* to be immediately dismissed *and to recover costs and*

14   *reasonable attorney fees from the person joining the trustee*." (Emphasis added.)  T&B may

15   file a motion for attorneys fees and costs in accordance with LRCiv. 54.2.

16                              *Motion To Amend*

17        Plaintiffs also seek leave of this Court to file a second amended complaint.  Leave to

18   amend a complaint is within the Court's sound discretion, and in  exercising this discretion,

19   the Court must be guided by the command of Rule 15(a), which provides that "leave shall

20   be freely given when justice so requires." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373

21   (9th Cir. 1990) (citing Fed.R.Civ.P. 15(a)).  The Court should consider five factors when

22   assessing whether to allow leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to

23   the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously

24   amended the complaint. *Id.*  When dismissing for failure to state a claim, the Court should

25   grant leave to amend unless the Court determines that the pleading could not possibly be

26   cured by the allegations of other facts. *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.

27   1995); *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by

28   itself, justify the denial of a motion for leave to amend.").

1    Plaintiffs attached their proposed second amended complaint as an exhibit to their

2    motion to amend.  The Court finds that Plaintiffs' request for a second amendment to their

3    complaint was not done in bad faith, nor has it resulted from undue delay.  Given that there

4    have been several motions to dismiss filed on the basis of Plaintiffs' first amended complaint,

5    the Court does find that there would be some level of prejudice to Defendants, albeit small.

6     The Court also notes that Plaintiffs have already amended their complaint and are seeking

7    leave to do so a second time.  However, after reviewing Plaintiffs' second amended

8    complaint, the Court finds that factor four–futility–weighs heavily against granting Plaintiffs'

9    request for leave to amend.  None of Plaintiffs' proposed changes in their second amended

10   complaint rescue Plaintiffs' claims that are time-barred as discussed above.  The thrust of

11   Plaintiffs' changes occur in Count VII (or renumbered as Count VI in Plaintiffs' proposed

12   second amended complaint).  While Plaintiffs' proposed changes in Count VII do add details

13   about the MERS system, they do not cure the deficiencies discussed above.

14       Therefore, because the Court finds that Plaintiffs' request for a second amended

15   complaint would prove futile, the Court denies the motion.

16                                          **CONCLUSION**

17       Accordingly,

18       **IT IS ORDERED** that: Defendant Tiffany & Bosco, P.A.'s Motion to Dismiss is

19   granted (Doc. # 44); Defendant GMAC Mortgage, L.L.C.'s Motion to Dismiss Plaintiffs'

20   First Amended Complaint (Doc. # 118) is granted; Defendants MERS and MERSCORP,

21   Inc.'s Motion to Dismiss (Doc. # 122) is granted; Defendants Freddie mac and Fannie Mae's

22   Motion to Dismiss (Doc. # 123) is granted; Defendant United Guaranty Corporation's

23   Motion to Dismiss (Doc. # 124) is granted; Defendants National City Corporation and PNC

24   Financial Services Group, Inc.'s Motion to Dismiss (Doc. # 126) is granted; Defendant GE

25   Money Bank's Motion to Dismiss (Doc. # 127) is granted; Defendants National City Bank

26   and National City Mortgage's Motion to Dismiss (Doc. # 128) is granted; Defendants

27   Countrywide and First Franklin's Motion to Dismiss (Doc. # 133) is granted; Defendant

28   Wells Fargo's Motion to Dismiss (Doc. # 137) is granted; Defendant HSBC Mortgage

Corporations, U.S.A.'s Motion to Dismiss (Doc. # 139) is granted; Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss (Doc. # 147) is granted.

**IT IS FURTHER ORDERED** that Defendants Countrywide Home Loans, Inc., Bank of America, N.A., Merrill Lynch & Company, Inc., First Franklin Financial Corporation, and LaSalle Bank, N.A.'s Motion for Leave to File Sur-Reply (Doc. # 166) is denied as moot.

**IT IS FURTHER ORDERED** that Plaintiffs Olga Cervantes, Carlos Almendarez, and Arturo Maximo's Motion to Amend Complaint (Doc. # 189) is denied.

**IT IS FURTHER ORDERED** that Defendants' Motion to Transfer and Consolidate (Doc. # 194) is denied as moot.

**IT IS FURTHER ORDERED** that Defendant Tiffany & Bosco, P.A.'s request for attorneys' fees is denied without prejudice, with leave to re-file pursuant to LRCiv 54.2.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment accordingly.

DATED this 23rd day of September, 2009.

James A. Teilborg
United States District Judge